36 F.3d 1098
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff/Appellee,
v.
James COOK, Defendant/Appellant.
 No. 93-6227.
 United States Court of Appeals, Sixth Circuit.
 Sept. 20, 1994.
 
 Before: SUHRHEINRICH, BATCHELDER, and DAUGHTREY, Circuit Judges.
 PER CURIAM.
 
 
 1
 The defendant, James Cook, appeals his conviction and sentence for wire fraud, asking that we review the sufficiency of the evidence and the legality of the sentence imposed by the district court. We affirm the conviction but conclude that the case must be remanded for resentencing.
 
 
 2
 A jury convicted James Cook of 58 counts of wire fraud, in violation of 18 U.S.C. Sec. 1343, which carries a five-year maximum sentence. The evidence showed that the defendant devised a scheme to defraud an elderly brother and sister, Willis and Mary Frances Bradley, out of over $500,000. The victims met the defendant in 1978 or 1979. In 1981, the defendant was convicted on an unrelated charge of theft by deception in Kentucky state court, for actions that defrauded the Bradleys out of about $15,000. That case was investigated against the Bradleys' wishes; the Bradleys even paid the defendant's attorney's fee. After his release from prison, the defendant again tried to defraud the Bradleys using a scheme that led to his convictions in this case. Beginning in 1987, the defendant borrowed money from the Bradleys over a two-year period, for various reasons. Sometime in 1989, he told them that he had a pending claim under an insurance policy worth over $500,000 as a result of a work-related injury, but that he needed money to get the claim paid and to pay taxes on the proceeds. Over a five-year period, from 1987 to 1992, the victims loaned money to the defendant, based on his promise to repay them, in a total amount of $482,565.80 and incurred another $19,532.00 in fees to wire him the money.
 
 
 3
 The Bradleys eventually depleted their savings. When they sought a mortgage on their home to continue paying Cook, a local banker became suspicious and notified the F.B.I. After obtaining information from the Bradleys indicating that Cook had promised to repay them with insurance proceeds, the F.B.I. discovered that no such insurance policy existed. With the Bradleys' permission, the F.B.I. taped conversations between Bradley and Cook in which Cook mentioned his efforts to collect the insurance proceeds and his immediate need of money to do so. Mr. Bradley also gave the F.B.I. a copy of his ledger listing the amounts that he and his sister had lent to Cook since 1987, amounts totalling $504,147.80.
 
 
 4
 The defendant insisted that the Bradleys gave him the money as a gift, and that Mr. Bradley had devised the insurance proceeds story to use on the phone in order that Ms. Bradley not be made aware of the generous nature of the gifts. Mr. Bradley, however, testified that Cook promised to repay him with the insurance proceeds. Two of Cook's many ex-wives discredited Cook by testifying about the scam and about how Cook "blew" the money. The jury convicted Cook on all 58 counts and the trial judge sentenced him to 58 concurrent prison terms of 175 months each.
 
 
 5
 The defendant offers several grounds for appeal. First, he argues that the evidence was insufficient to convict him of wire fraud because the government failed to prove his specific intent to defraud the Bradleys. Second, he argues that his sentence is illegal because it exceeds the statutory maximum. Third, he challenges the district court's calculation of his offense level and criminal history category under the Guidelines, as well as its decision to depart upward.
 
 The Sufficiency of the Evidence
 
 6
 With regard to the sufficiency of the evidence, the defendant alleges that the government failed to prove his intent to defraud, a requirement under 18 U.S.C. Sec. 1343. Under United States v. Ames Sintering Co., 927 F.2d 232, 234 (6th Cir.1990), in order to prove wire fraud, the government must show that the defendant had a scheme to defraud, that he or she used wire communications to execute the plan, and that the scheme involved the intent to deprive another of money or property. The defendant alleges that the government did not show the required intent.
 
 
 7
 In this case, our review of the record indicates that there was ample proof of the defendant's intent to defraud the Bradleys. Mr. Bradley testified that the defendant promised to repay them when he received his insurance proceeds. The taped conversations verified Mr. Bradley's account of Cook's promises, and additional evidence showed that Cook did not have the phantom insurance policy. As noted above, two of Cook's ex-wives testified about Cook's fraudulent schemes to get money from the Bradleys and described how Cook used the money--not for insurance purposes. Although the defendant testified that the money was a gift, the jury obviously discredited Cook's story. Viewed in the light most favorable to the government, as required under Jackson v. Virginia, 443 U.S. 307, 319 (1979), we find that the record fully supports the jury's verdict.
 
 The Legality of the Sentence
 
 8
 In addition to the sufficiency of the evidence, the defendant challenges the legality of his sentence, arguing that the 175-month concurrent sentences imposed for each of the 58 counts exceed the five-year statutory maximum on each count. The defendant is correct in his assertion, and, therefore, we find it necessary to remand the case to the district court for resentencing in accordance with both the statute and the Guidelines.
 
 
 9
 We note, however, that the district court is not precluded from sentencing the defendant to the same effective term of imprisonment on remand. By following USSG Sec. 5G1.2, the Guidelines section that explains the sentencing of multiple-count offenders, the court may sentence Cook to 175 months of imprisonment by applying the provisions on consecutive and concurrent sentencing.
 
 Calculation of the Offense Level
 
 10
 The defendant presents other sentencing objections that will be relevant on remand, including challenges to the calculation of his offense level on several grounds. First, he disputes the court's valuation of the loss at $504,147.80, based on the presentence report and Mr. Bradley's ledger. He argues that the sum used includes the balance he owed in restitution from his 1981 Kentucky conviction for theft by deception, another offense in which the Bradleys were his victims. He also asserts that the loss amount included "loans" from 1981 to 1986, and amounts received between September 10, 1987, and January 11, 1989, when the grand jury found the fraud to have begun. He offers $382,171.00 as the appropriate amount of loss.
 
 
 11
 We conclude that the court properly adopted the amount in the presentence report as the amount of loss. This loss for which the defendant was held responsible did not include the restitution order or any amounts from 1981 to 1986. It did, however, include amounts from September 1987 to the date of the initial charged fraud. Under USSG Sec. 1B1.3(a)(2), the court may properly include "all acts and omissions ... that were part of the same course of conduct or common scheme or plan as the offense of conviction." The Sentencing Guidelines state that "[c]onduct that is not formally charged or is not an element of the offense of conviction may enter into the determination of the applicable guidelines sentencing range." USSG Sec. 1B1.3, comment. (backg'd); see also United States v. Smith, 887 F.2d 104, 106-08 (6th Cir.1989). The evidence in this case proved that the defendant's scheme began in 1987. Although the defendant's story about alleged insurance proceeds did not emerge until 1989, he "borrowed" money for other purposes from 1987 until 1989. As part of the same scheme, these amounts were rightly included in the amount of loss because they were part of the "relevant conduct."
 
 
 12
 Cook's second argument against his offense level is that the court incorrectly included two points because the offense involved more than minimal planning and more than one victim. USSG Sec. 2F1.1(b)(2), which is part of the fraud and deceit guideline under which the defendant was sentenced, provides that two points should be added when an offense involves "(A) more than minimal planning, or (B) a scheme to defraud more than one victim." The defendant defrauded both Willis and Mary Frances Bradley over a period of five years, which inherently requires much planning. He qualifies for an increase under Sec. 2F1.1(b)(2).
 
 
 13
 The defendant also disputes the addition of two points to his offense level for defrauding a "vulnerable victim." USSG Sec. 3A1.1 provides that "[i]f the defendant knew or should have known that a victim of the offense was unusually vulnerable due to age, physical, or mental condition, or that a victim was otherwise particularly susceptible to the criminal conduct," two points should be added to the offense level. This case involved two victims in their eighties, whom the defendant had previously been convicted of defrauding. He knew about their vulnerability to his fraudulent schemes, leading us to conclude that the addition of points was proper. Although the defendant argues that these two points punish him for his previous fraud on the Bradleys, we hold, to the contrary, that this consideration simply recognizes his knowledge of his victims' vulnerability.
 
 Calculation of Criminal History Score
 
 14
 In addition to these arguments regarding his offense level, the defendant challenges his criminal history score, arguing that several of his prior convictions were erroneously used as a basis for increasing his criminal history score. His first assertion is that his October 14, 1971, conviction was more than 15 years old at the time of sentencing and thus was wrongly included as a basis for a three-point increase in his criminal history calculation. USSG Sec. 4A1.1(a) requires the addition of three points for any prior sentence of imprisonment over one year and one month. The Guidelines, however, include such sentences only if they were imposed within 15 years of the "commencement of the instant offense," which includes relevant conduct as calculated under USSG Sec. 1B1.3.[1] Moreover, if any part of the prior sentence was served during the preceding fifteen years, the prior conviction is counted. See USSG Sec. 4A1.2(e)(1). The defendant was released from jail for his 1971 offense in March 1973, and the relevant conduct in the instant offense began in September 1987. Thus, the earlier conviction was a proper basis for a three-point increase.
 
 
 15
 The defendant disputes the addition of points for his prior convictions on June 10, 1978, May 14, 1982, and August 20, 1990, because they did not result in prison time, but in sentences of probation, a fine, and probation, respectively. Under USSG Sec. 4A1.1(c), the court must add one point to the criminal history score "for each prior sentence not counted in (a) or (b)," without regard to what the sentence was. The court therefore properly added criminal history points for these offenses.
 
 
 16
 The defendant argues that his May 1982 simple assault conviction, for which he received a fine, and his October 1987 "threatening and intimidating" conviction, for which he received one day (time served), were uncounseled pleas and should therefore not be used as the basis of one-point increases under USSG Sec. 4A1.1(c). USSG Sec. 4A1.2 comment. (backg'd) states that "[p]rior sentences, not otherwise excluded, are to be counted in the criminal history score, including uncounseled misdemeanor sentences where imprisonment was not imposed." In United States v. Nichols, 114 S.Ct. 1921 (1994), aff'g, 979 F.2d 402 (6th Cir.1992), the United States Supreme Court recently held that "an uncounseled misdemeanor conviction, valid under [United States v.] Scott [440 U.S. 367 (1979) ] because no prison term was imposed, is also valid when used to enhance punishment at a subsequent conviction." Nichols, 114 S.Ct. at 1928. Accordingly, in Nichols, the Court affirmed the addition of one point to the defendant's criminal history, and the resultant increase in the defendant's sentence, based on the use of an uncounseled misdemeanor conviction which had not resulted in incarceration. In Cook's case, because the uncounseled conviction for threatening did result in incarceration, albeit of only one day, that conviction is not valid under Scott and Nichols for purposes of sentence enhancement and the addition of one point was error; the court's addition of one point for the uncounseled misdemeanor conviction for assault, however, was proper because that conviction resulted only in a fine. Thus, one point should be deducted from the defendant's criminal history score. Because a one-point reduction in his criminal history score of 17 does not affect his placement in the criminal history category of VI, however, it turns out that this minor miscalculation will not change the overall result.
 
 
 17
 The defendant next argues that the court improperly added two points under USSG Sec. 4A1.1(d), which provides for a two-point increase for offenses committed "while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." Although Cook asserts that he had been released from active parole, he was on inactive parole as a result of rape and sodomy convictions in 1975. Released from prison in 1981, he remained on active parole until 1987. In 1987, he was placed on inactive parole, where he will remain until 2037, the maximum expiration date of his rape sentence, unless the parole board issues a final discharge sooner. See Ky.Rev.Stat.Ann. Sec. 439.354 (Michie/Bobbs-Merrill 1993). The defendant presented no evidence of a final discharge, and thus the court properly increased his criminal history score for this reason.
 
 Calculation of the Upward Departure
 
 18
 Finally, the defendant insists that the court erred by departing upward six levels from offense level 22 to 28, contending that such a large departure is unreasonable under the upward-departure test previously adopted by this court. USSG Sec. 4A1.3 permits upward departures "[i]f reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes...." We utilized a three-part test for review of upward departures in United States v. Joan, 883 F.2d 491, 494 (6th Cir.1989) (citing United States v. Diaz-Villafane, 874 F.2d 43, 49 (1st Cir.), cert. denied, 493 U.S. 862 (1989)). The Joan test requires that we first determine "whether or not circumstances are of a kind or degree that they may appropriately be relied upon to justify departure"; this inquiry is a matter of law. Second, we must determine whether, as a matter of fact, those circumstances "actually exist in the particular case." Finally, "the direction and degree of departure must, on appeal, be measured by a standard of reasonableness." Under Joan, a reviewing court "will not lightly disturb" such a "judgment call," id., and should generally defer to the district court's determination of reasonableness "unless there is little or no basis for the trial court's action." Id. at 496.
 
 
 19
 In this case, the district court found that the case was "highly unusual in the manner in which the fraud was conducted and the innocence of the people upon whom the fraud was perpetrated." The court departed because of
 
 
 20
 the blatant and repeated acts by the defendant of a similar nature and similar cases, ... and the similar manner in which the defendant appears to have preyed upon other individuals and perpetrated fraud upon them. To the court, it's just an incredibly unusual situation that these kinds of acts can and did continue in such a similar way, and that if any person could be considered a rampant recidivist in terms of repeated unusually similar activities, this defendant would have to be considered one.
 
 
 21
 Under the first prong of the test, which reviews the legal justification for departure, recidivism is certainly a reason for departure. See United States v. Thomas, Nos. 93-5514 and 93-5515, 1994 WL 197406 at * 3 (6th Cir. May 23, 1994); USSG Sec. 4A1.3, comment. (backg'd). Ample evidence, moreover, supports the court's finding of Cook's recidivist tendencies. Finally, this court must review the reasonableness of the departure. Although the court did not choose the next highest level of departure, as suggested in the Guidelines, it was not required to do so because it provided a clear statement of the existing aggravating circumstances that the Sentencing Commission failed to consider adequately, and the reasons that the extended sentence would be appropriate. See Thomas, 1994 at WL at * 4. Moreover, we note that in Joan, the court upheld a similarly large upward departure. See Joan, 883 F.2d at 496 (57 to 71 month range increased to 120 months). The extent of the departure here was similarly warranted.
 
 
 22
 The defendant also objects to the departure based on USSG Sec. 5K2.0, which permits departure for any "aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission...." Here, the district court considered the lies, deception, and manner of conducting the fraud to be outrageous. Similarly, in United States v. Benskin, 926 F.2d 562, 565-6 (6th Cir.1991), we ruled that a six-year fraud scam justified upward departure because of the extent to which the harm caused was knowingly and repeatedly risked by the defendant, and because of the extent of the financial and emotional harm to the victims. Because of the extent of the fraud in this case and the devastation to the victims, this case likewise merits a substantial departure.
 
 
 23
 The defendant, however, also objects to the use of USSG Sec. 5K2.8 as a ground for departure based on "extreme conduct." This ground permits departure for conduct "unusually cruel, brutal or degrading to the victim." This justification seems inappropriate for a case that does not involve physical injury and, therefore, we conclude that the court misapplied USSG Sec. 5K2.8. On remand, the court should refrain from using this ground for departure.
 
 
 24
 For the foregoing reasons, we AFFIRM the defendant's conviction, but REMAND this case to the district court for resentencing in accordance with this opinion.
 
 
 
 [1]
 See USSG Sec. 4A1.2 comment. (n.8)