IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 93-1067

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

PHILIP SCOTT ASHBURN,

Defendant-Appellant.

---

Appeal from the United States District Court for the
Northern District of Texas

---

November 15, 1994

Before POLITZ, Chief Judge, GOLDBERG, KING, GARWOOD, JOLLY,
HIGGINBOTHAM, DAVIS, JONES, SMITH, DUHÉ, WIENER, BARKSDALE,
E. GARZA, DeMOSS, BENAVIDES, STEWART, and PARKER, Circuit Judges.

ROBERT M. PARKER, Circuit Judge:

This case requires us to examine again the subject of departures under Section 4A1.3 of the Federal Sentencing Guidelines. Specifically, we must address whether conduct that formed the basis for counts of an indictment dismissed pursuant to a plea agreement may be considered in departing upward from the Guidelines, and we must revisit the issue of the justification required for such a departure under *United States v. Lambert*, 984 F.2d 658 (5th Cir. 1993) (en banc).

Pursuant to a plea agreement, Philip Scott Ashburn pled guilty to two counts of bank robbery in violation of 18 U.S.C. §

2113(a).  The district court determined that the appropriate range for Ashburn's offense under the Sentencing Guidelines was 63 to 78 months.  However, the court also determined that this range did not adequately reflect Ashburn's criminal history or likelihood of recidivism and thus departed upward, sentencing Ashburn to 180 months imprisonment.

Ashburn appealed his sentence.  A panel of this court affirmed in part, but held that remand was required because the district court improperly considered the dismissed counts of the indictment as a basis for the upward departure and had not offered sufficient justification for a departure under Section 4A1.3.[1]  On reconsideration *en banc*, we conclude that the departure was not improper, and we affirm the sentence imposed by the district court.


I. BACKGROUND

On August 26, 1992, Ashburn, along with a co-defendant, was indicted for a single-count of bank robbery in violation of 18 U.S.C. § 2113(a).  A superseding indictment charged Ashburn with three additional counts of bank robbery.  Ashburn pled guilty to Counts 3 and 4.  In return for the guilty plea, the government agreed to dismiss counts 1 and 2 and to forego prosecution of two additional attempted robberies.

Count 3 charged Ashburn with a bank robbery which occurred on July 3, 1992 in which $4,167 was stolen from the Bank of

---

1.    *United States v. Ashburn*, 20 F.3d 1336 (5th Cir. 1994).

America in Fort Worth, Texas.  Count 4 charged Ashburn with a robbery in which approximately $32,000 in cash was stolen from the American Bank of Hurst, Texas on July 31, 1992.  The dismissed counts charged Ashburn with robbing Arlington National Bank in Arlington, Texas on December 27, 1991 and Sunbelt Savings in Fort Worth, Texas on January 17, 1992.

The presentence investigation report (PSR) prepared prior to Ashburn's sentencing revealed that in 1984 he had pled guilty to armed bank robbery in Portland, Oregon.  For this offense, Ashburn served a six year sentence in the custody of the Attorney General under the Federal Youth Corrections Act, formerly codified at 18 U.S.C. § 5010(b).  The PSR assessed three criminal history points against Ashburn for this prior conviction, producing a Criminal History Category of II.[2]  The defendant's presentence report from the District of Oregon indicates that in addition to the offense to which Ashburn pled guilty, he had committed four other bank robberies in Oregon and one in Salt Lake City, Utah.[3]

After appropriate enhancements and a three level reduction for Acceptance of Responsibility, Ashburn's Total Offense Level

---

2.    The Guidelines include only prior sentences, not prior offenses or prior conduct, in calculating the criminal history category.  U.S.S.G. § 4A1.1.

3.    The report also notes that "Ashburn was unquestionably the ringleader in these bank robberies.  He planned them, recruited accomplices to assist him and was in charge of dividing the proceeds afterwards."  In addition, the report indicates that a loaded revolver was used in three of the robberies.

was determined to be 25.[4]  With this offense level and a Criminal History Category of II, the Guidelines provided for a sentencing range of 63 to 78 months.  The court, dissatisfied with this range, notified the parties of its provisional intention to depart upward from the guideline range.

To support the upward departure, the government called Federal Bureau of Investigation (FBI) agent, Deborah Eckert, who testified at the sentencing hearing about her investigation into several robberies and attempted robberies for which Ashburn was believed to be responsible.  Agent Eckert described an interview she conducted with Ashburn's co-defendant, April Jeanette English.  In that interview, English asserted that Ashburn admitted to her that he had committed two earlier robberies in December of 1991 and January of 1992.  These two robberies had been confirmed in detail and were charged in counts 1 and 2 of Ashburn's indictment.

English also told Eckert that on April 17, 1992, Ashburn called English from Key West, Florida and told her "I just did a job."  Eckert confirmed that a bank robbery was reported in Key West, Florida on the specified day.[5]  Eckert also testified regarding evidence of Ashburn's involvement in attempted robberies of the Watauga State Bank in Watauga, Texas on July 24,

_____

4.    Under the Guidelines, bank robbery is a non-groupable offense.  U.S.S.G. § 3D1.2(d).  Thus, the dismissed counts could not be considered in the offense level calculation under the relevant conduct provision as a part of the same course of conduct or common scheme or plan.  U.S.S.G. § 1B1.3(a)(2).

5.    Ashburn was not charged with this robbery.

1992, and the Arlington National Bank in Arlington, Texas on July 17, 1992.[6]

The district court concluded that Criminal History Category II did not adequately reflect the seriousness of Ashburn's past conduct or the likelihood that he would commit additional crimes. The judge therefore departed upward, sentencing Ashburn to serve concurrent 180 month terms of imprisonment on Counts 3 and 4. The court also sentenced Ashburn to a 3 year term of supervised release, and a mandatory $100 assessment. On appeal, Ashburn contends that the district court erroneously calculated his offense level and criminal history category and made various errors in its decision to depart upward.

A panel of this court found that Ashburn's objections to the offense level and criminal history category were without merit.[7] However, the panel held that the district court failed to adequately explain its reasons for the upward departure.[8] In addition, the panel majority held that the counts dismissed pursuant to the plea bargain should not have been considered in effecting an upward departure.[9] The dissent argued that nothing in the plea agreement or the Guidelines precluded the district court from using the dismissed counts to enhance the defendant's

---

6.    As a part of the plea bargain, the government agreed not to prosecute Ashburn for these two attempts.

7.    20 F.3d at 1338-43.

8.    20 F.3d at 1344-46.

9.    20 F.3d at 1346-48.

sentence.[10]

We ordered that this case be reheard *en banc*. We reject Ashburn's appeal with regard to the offense level and criminal history calculations for the reasons set out in the panel opinion.[11] However, we find it necessary to reconsider the panel's holdings with respect to the district court's departure.

## II. DISCUSSION

A district court may depart upward from the Sentencing Guidelines if the court finds that an aggravating circumstance exists that was not adequately taken into consideration by the Sentencing Commission. 18 U.S.C. § 3553(b). Whenever a defendant is sentenced, the district judge is required to "state in open court the reasons for its imposition of the particular sentence." 18 U.S.C. § 3553(c). If the court departs upward from the Guidelines, the court must also state "the specific reason for the imposition of the sentence different from that described." Id.

"Our review of a sentence under the guidelines is 'confined to determining whether a sentence was imposed in violation of law or as a result of an incorrect application of the sentencing guidelines.'" *United States v. Shipley*, 963 F.2d 56, 58 (5th Cir.) (quoting *United States v. Nevarez-Arreola*, 885 F.2d 243, 245 (5th Cir. 1989)) (internal quotations omitted), *cert. denied*, -- U.S.

---

10. 20 F.3d at 1350.

11. The panel opinion was vacated in its entirety when we granted rehearing *en banc*. 5th Cir. R. 41.3. Parts II.A. and B. of the panel opinion are reinstated by this decision.

6

--, 113 S. Ct. 348, 121 L. Ed. 2d 263 (1992); 18 U.S.C. § 3742(e). We review the district court's decision to depart upward for abuse of discretion. *United States v. McKenzie*, 991 F.2d 203, 204 (5th Cir. 1993). We affirm a departure from the Guidelines "if the district court offers 'acceptable reasons' for the departure and the departure is 'reasonable.'" *United States v. Lambert*, 984 F.2d 658, 663 (5th Cir.1993) (en banc) (quoting *United States v. Velasquez-Mercado*, 872 F.2d 632, 637 (5th Cir.1989)).

A. Consideration of Dismissed Counts in Upward Departure

Ashburn contends that the sentencing court improperly considered the December 1991 and January 1992 robberies as a basis for upward departure because this conduct formed the basis for the counts of Ashburn's indictment which were dismissed pursuant to his plea bargain. We find this argument unpersuasive.

The circuits are split on this question. The Third and Ninth Circuits[12] have held that the defendant does not get the benefit of his plea bargain when the district court departs upward based on the dismissed counts of the indictment. The Second and Tenth Circuits,[13] on the other hand, have held that prior criminal conduct related to dismissed counts of an indictment may be used to justify an upward departure. We are inclined to agree with the latter

---

12. United States v. Thomas, 961 F.2d 1110, 1121 (3d Cir. 1992); United States v. Castro-Cervantes, 927 F.2d 1079 (9th Cir. 1990).

13. United States v. Zamarripa, 905 F.2d 337 (10th Cir. 1990); United States v. Kim, 896 F.2d 678 (2d Cir. 1990).

view.

United States Sentencing Commission Guidelines Manual (U.S.S.G.) § 4A1.3 authorizes a court to depart upward "[i]f reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes . . . ."  In deciding whether to depart because of the defendant's criminal history, subsection (e) expressly authorizes the court to consider "prior similar adult criminal conduct not resulting in a criminal conviction."  U.S.S.G. § 4A1.3 (e) (Policy Statement).

Neither this guideline nor its commentary suggests that an exception exists for prior similar criminal conduct that is the subject of dismissed counts of an indictment.[14]  Section 1B1.4 provides that in determining "whether a departure from the guidelines is warranted, the court may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law."[15]

---

14.  We do not interpret the word "prior" in subsection (e) so narrowly as to exclude separate offenses that were part of the series of crimes that resulted in the present arrest and conviction.  *Contra United States v. Coe*, 891 F.2d 405, 409-10 (2d Cir. 1989) ("where a defendant commits a series of similar crimes, it would be elevating form over substance to regard the early episodes in the series as "prior criminal history" simply because the defendant pled guilty to the last in the series, rather than the first.")  Instead, we read "prior" to allow consideration of all similar adult criminal conduct not resulting in conviction that occurred prior to sentencing.

15.  The commentary to this section provides, in part, that

[a] court is not precluded from considering information

8

We have found no statute, guidelines section, or decision of this court that would preclude the district court's consideration of dismissed counts of an indictment in departing upward.

The guidelines provisions on plea agreements are not to the contrary. Section 6B1.2 provides that the court may accept a plea agreement that includes the dismissal of charges or an agreement not to pursue potential charges if the remaining charges "adequately reflect the seriousness of the actual offense behavior". U.S.S.G. § 6B1.2 (a) (Policy Statement). Ashburn contends that acceptance of a plea agreement subject to this standard is inconsistent with a subsequent decision to depart upward from the applicable guideline range. We disagree.

Ashburn pled guilty to two counts of bank robbery. In all respects, these counts were similar to the counts dismissed and the attempted robberies not charged. The two count conviction subjected the defendant to a maximum sentence of forty years imprisonment. 18 U.S.C. § 2113(a). Under the circumstances, we must agree with the district court's implicit finding that the two count plea adequately reflected Ashburn's "actual offense

---

that the guidelines do not take into account. For example, if the defendant committed two robberies, but as part of a plea negotiation entered a guilty plea to only one, the robbery that was not taken into account by the guidelines would provide a reason for sentencing at the top of the guideline range. In addition, information that does not enter into the determination of the applicable guideline sentencing range may be considered in determining whether and to what extent to depart from the guidelines.

Commentary to U.S.S.G § 1B1.4.

behavior".

Such a finding, however, does not guarantee that a defendant's criminal history category will adequately reflect the defendant's past criminal conduct or the likelihood that he will commit other crimes.  If it does not, the court is authorized to make a separate determination on the need for departure in sentencing under section 4A1.3.  We decline the defendant's invitation to hold that this determination is precluded once a plea agreement is accepted under section 6B1.2.

In addition, the plea agreement Ashburn accepted contained no language that could have led him to believe that the dismissed counts could not be used as the basis for an upward departure.  The plea agreement provided that the government would dismiss counts 1 and 2 of the indictment and would not prosecute Ashburn for the attempted robberies occurring on July 17 and July 24, 1992.  The government has complied completely with those obligations.

Moreover, the plea agreement clearly stated that there was no agreement as to what the sentence would be, that no one could predict with certainty what guideline range would be applicable, and that the defendant would not be allowed to withdraw his plea if the court departed from the applicable guideline range.  Thus, the language of the plea agreement in no way implies a limitation on the court's power to consider relevant information or to depart from the guideline range.  Indeed, the agreement clearly contemplates the possibility that the court would depart upward when all of the relevant information was considered.  Therefore,

10

Ashburn could not reasonably have inferred from the plea agreement that the district court was barred from considering the dismissed counts in its departure determination.

B. Adequacy of Departure Justification

Under section 4A1.3, an upward departure "is warranted when the Criminal History Category significantly under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit further crimes." U.S.S.G. § 4A1.3 (Policy Statement). In *United States v. Lambert*,[16] we considered the procedure a district court must follow when departing upward under this provision. We held that the district court should consider each intermediate criminal history category, and should state for the record that it has done so. In addition, the court should explain why the criminal history category as calculated under the guidelines is inappropriate, and why the category it chooses is appropriate. *Id.* at 662-63.

At the same time, we made it clear that

> we do not . . . require the district court to go through a ritualistic exercise in which it mechanically discusses each criminal history category it rejects en route to the category that it selects. Ordinarily the district court's reasons for rejecting intermediate categories will clearly be implicit, if not explicit, in the court's explanation for its departure from the category calculated under the guidelines and its explanation for the category it has chosen as appropriate.

*Id.* at 663. Using this reasoning, we find that the district court offered adequate justification for the sentence it imposed.

---

16.  984 F.2d 658 (5th Cir. 1993) (en banc).

11

At the sentencing hearing, the district judge indicated on the record that his concern was caused by the fact that the defendant committed a series of bank robberies in 1983 and then another series of robberies beginning in 1991, less than two years after his release from supervision following the 1984 conviction. Since Ashburn's criminal history calculation was based solely on the guilty plea to one count of robbery in 1984, the court felt that the indicated guideline range did "not adequately reflect the seriousness of this defendant's past criminal conduct and, perhaps more importantly, the likelihood that he will commit other crimes."

The district judge determined that had the defendant previously been convicted of the robbery offenses committed in December of 1991, January of 1992, and April 1992, he would have had nine additional criminal history points. Under the court's calculations, Ashburn then would have a total of twelve criminal history points and a corresponding Criminal History Category of V. Using this criminal history category and Ashburn's offense level of 25, the judge determined a hypothetical guideline range of 100 to 125 months.

The court then cited the robberies committed in the early 1980s that did not result in conviction and concluded that "if they were to be taken into account, the Criminal History Category VI would not be sufficient to take into account his past criminal conduct." The court also referred to the attempted robberies that the government agreed not to prosecute. The court stated that given the "likelihood the defendant will commit other crimes . . .

12

as well as the seriousness of his past criminal conduct" the court would impose a "rather drastic upward departure from what the guideline range contemplates." The judge then sentenced Ashburn to a term of imprisonment of 180 months, found by indexing the Criminal History Category of VI with an offense level of 29.

The justification offered by the district court clearly indicates why the sentencing range recommended by the Guidelines was inappropriate and why the court found the sentence imposed to be appropriate. The district court did not expressly examine each intervening criminal history category. However, we do not require the district court to go through such a "ritualistic exercise" where, as here, it is evident from the stated grounds for departure why the bypassed criminal history categories were inadequate. *Lambert*, 984 F.2d at 663.

In *Lambert*, we indicated that we could conceive of a "very narrow class of cases" in which the district court's departure was so great that we would require "explanation in careful detail" of the district court's reasons for finding lesser adjustments in the defendant's criminal history score inadequate. *Id.* Although the sentence imposed in this case was more than twice the recommended guideline range, it was not the sort of drastic departure we referred to in *Lambert*. In fact, we note that the instant departure is not significantly greater than departures previously approved by this court. *See United States v. McKenzie*, 991 F.2d 203, 205 n.7 (5th Cir. 1993); *Lambert*, 984 F.2d 658 (affirming departure sentence that was twice guideline range).

13

C. Reasonableness of the Departure

The final question we must address is whether the district court's departure from the Sentencing Guidelines was reasonable in light of the court's articulated justification. We hold that it was. Although the ultimate sentence rose from a potential 78 months under the guidelines to 180 months, this result is not unreasonable in light of the evidence of numerous instances of past criminal conduct, which were not considered in the criminal history calculation, and the overwhelming indication that the defendant was inclined to return to a similar course of behavior.

## III. CONCLUSION

Parts II.A. and B. of the panel opinion are REINSTATED, all other parts of the panel opinion remain VACATED, and the sentence imposed by the district court is, therefore, AFFIRMED.

GOLDBERG, Circuit Judge, with whom DeMOSS, Circuit Judge, joins, dissenting:

This case calls for us to examine the range of information a sentencing court may consider in upwardly departing from the sentencing guidelines. The majority opinion takes a skyward view of the information a sentencing court may consider; I would prefer to keep the informational vistas of sentencing courts a little closer to the horizon.

Thousands of pages and countless words have been written in connection with the sentencing guidelines. The issues in this case require that we add a few more pages to the existing wisdom

14

of this most dynamic area of law.  In this case the sentencing guidelines indicated a nadir sentence of 63 months, and the sentencing court took some astronomical route to attain an apogeic sentence of 180 months. Believing that the course taken by the sentencing court was both uncharted and out of bounds, I would reverse.  So, let us put on the habiliments of an astronaut as we journey into the world of the sentencing guidelines.

I

The controversy presented to this en banc court is whether a sentencing court can consider dismissed charges in upwardly departing from the sentencing guidelines, and the degree to which a sentencing court must explain its actions when it decides to depart from the guidelines.  The defendant in this case, Philip Scott Ashburn, was charged with four counts of armed bank robbery. Pursuant to a plea bargain, Ashburn pleaded guilty to two counts of armed bank robbery in return for a dismissal of the remaining two counts and a promise not to prosecute other crimes which he was suspected of committing.  After the sentencing court accepted the guilty plea, it decided that Ashburn's Criminal History Category did not adequately reflect the seriousness of his criminal conduct or his likelihood of recidivism.  The court noted that if Ashburn had been convicted of the crimes he had been charged with, as well as other crimes he was suspected of committing, he would have a Criminal History Category of VI.  The court then sentenced Ashburn as if he _had_ been convicted of those crimes that were either dismissed or never charged in the first

place. This resulted in a sentence of 180 months, or 230 percent of the maximum guideline range for the crimes for which Ashburn was actually convicted.

The sentence imposed by the sentencing court was not permitted by the guidelines, and was lacking in the full and adequate justification required by the guidelines for a departure. Each issue will be addressed in turn.

## II

The majority argues that dismissed charges may be taken into account by a sentencing court in augmenting a defendant's Criminal History Category. To support this conclusion, the majority makes a three-step argument. First, it cites U.S.S.G. § 4A1.3 for the proposition that a sentencing court may upwardly depart from the sentencing guidelines if it finds aggravating or mitigating factors the sentencing commission did not consider in formulating the guidelines. The majority points to this as proof of the wide latitude sentencing courts have in evaluating data which their sentencing decisions will be based upon. The majority's argument also implies that, in developing the guidelines, the sentencing commission did not consider the use of dismissed charges to augment a defendant's Criminal History Category. Second, the majority cites U.S.S.G. § 1B1.4 to support the proposition that the sentencing court may consider any information concerning the background, character and conduct of the defendant when determining whether a departure is permitted, unless the use of that information is prohibited by law. The

thrust of this argument is similar to that of the first argument, i.e., sentencing courts may select from a wide range of information in determining whether to depart from the guidelines. Finally, the majority claims that considering dismissed charges does not affect Ashburn's settled expectations with regard to his plea bargain agreement. The majority asserts that the plea bargain agreement made no guarantees about the length of the sentence, and as such, the departure did not violate the letter of the agreement. The majority's argument will now be reviewed more thoroughly with the hope of showing that each strand of this triad is weak and unsupportable.

A.    *Has The Sentencing Commission Considered Dismissed Charges In Connection With The Criminal History Category?*

The majority believes that § 4A1.3 creates an aperture for considering dismissed charges in augmenting the Criminal History Category because that section sanctions consideration of any factor not contemplated by the sentencing commission. The issue then turns on whether the sentencing commission contemplated using dismissed charges in connection with departures in the Criminal History Category. There are indications that the sentencing commission <u>did</u> consider the issue, and did not intend to permit the consideration of dismissed charges in augmenting the Criminal History Category.

Control over the information a sentencing court may consider in applying the guidelines is the sentencing commission's main tool in imposing order in the criminal sentencing process. In

response to this need for limiting the information sentencing courts may rely upon, some courts have adopted the doctrine of negative implication in determining whether the sentencing commission has considered a matter.  In other words, if the sentencing commission has adequately considered the relevance of a factor to the sentencing process, then that factor, as well as related circumstances, shall not be a proper basis for departure. United States v. Mason, 966 F.2d 1488 (D.C. Cir. 1992) (the guidelines' consideration of related factors precludes defendant's mode of apprehension from being a suitable basis for departure); see also, Robert H. Smith, Departure Under the Federal Sentencing Guidelines:  Should a Mitigating or Aggravating Circumstance be Deemed "Adequately Considered" Through "Negative Implication?", 36 Ariz. L. Rev. 265 (1994).

This doctrine is particularly important here because the sentencing commission amended U.S.S.G. § 6B1.2 in 1992 to allow sentencing courts to augment the defendant's Relevant Conduct Category based on charges dismissed pursuant to a plea bargain.[17] It would seem that in passing this amendment, the sentencing commission considered the impact of charges dismissed pursuant to a plea bargain, and did not find it necessary to extend

_____

17 It is clear from that record that the sentencing court's departure was based on the inadequacy of the Criminal History Category (U.S.S.G. § 4A1.3(e)), and not the Relevant Conduct Category (U.S.S.G. § 1B1.3(b)).  Nor could such a departure have been made, since the conviction in this case was for a non-groupable offense; namely robbery (U.S.S.G. § 2B3.1).  Non-groupable offenses are specifically exempted from inclusion within the Relevant Conduct Category.

consideration of this information to the Criminal History Category. As such, the majority's reliance on U.S.S.G. § 4A1.3 is misplaced, as it appears that the sentencing commission must have considered the role of dismissed charges in relation to the Criminal History Category and, by omission, has prohibited their combination.

B.   *Does Consideration Of Dismissed Charges In The Augmentation Of The Criminal History Category Violate Any Law?*

The majority finds further support for its argument in U.S.S.G. § 1B1.4 and the commentary thereto. This section provides that a court may consider "any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law." U.S.S.G. § 1B1.4. Furthermore, the commentary to this section specifically states that, "[f]or example, if [a] defendant commit[s] two robberies, but as part of a plea negotiation entered a guilty plea to only one, the robbery that was not taken into account by the guidelines would provide a reason for sentencing at the top of the guideline range." The majority believes that this section and its accompanying commentary explicitly permit a sentencing court to consider dismissed charges in augmenting a defendant's Criminal History Category. In fact, the effect of U.S.S.G. § 1B1.4 and its commentary lead me to a contrary conclusion.

Section 1B1.4 of the U.S.S.G. permits sentencing courts to rely on any information not prohibited by law in departing from the guidelines. The majority stated that it could find "no

statute, guidelines section, or decision of this court that would preclude the district court's consideration of dismissed counts of an indictment in departing upward."  However, U.S.S.G. § 6B1.2(a), comment., which implies that sentencing courts should only accept plea agreements that adequately reflect the seriousness of the actual offense behavior, seems to prohibit the consideration of counts dismissed pursuant to a plea agreement. The language in this section closely tracks that of Fed.R.Crim.P. 11(e), which requires that, if a sentencing court has accepted a plea bargain, then the sentence promulgated should embody the disposition agreed to in the plea bargain agreement.  Then Chief Judge Breyer of the First Circuit relied on both U.S.S.G. § 6B1.2 and Fed.R.Crim.P. 11(e) in querying why a guilty plea should be accepted if the agreement that brought the plea about did not call for an adequate sentence.  He stated:

> The court seems to have departed from the guidelines so that defendant's sentence would reflect the conduct charged in the remaining eleven counts of the indictment (counts that were dismissed in exchange for his guilty plea).  But if the court believed that defendant's punishment should reflect that conduct, why did it accept the plea bargain in the first place?

Unites States v. Plaza-Garcia, 914 F.2d 345, 348 (1st Cir. 1990); Cf. United States v. Greener, 979 F.2d 517, 521 (7th Cir. 1992) (upholding a district court's rejection of a plea bargain because it did not adequately reflect the defendant's actual offense conduct).  The majority, however, is not persuaded by the argument that U.S.S.G. § 6B1.2 and Fed.R.Crim.P. 11(e) prevent the augmentation of the Criminal History Category based on

20
20

charges dismissed pursuant to a plea bargain. Instead, the majority states that the sentencing court was permitted to accept Ashburn's guilty plea, and still disavow the sentence agreed to in the plea bargain agreement upon a determination that the suggested sentence did not adequately reflect the seriousness of Ashburn's criminal conduct or his likelihood of recidivism. The majority's construction will eviscerate Rule 11(e) of the Federal Rules of Criminal Procedure.

The majority opinion's reliance on the commentary accompanying U.S.S.G. § 1B1.4 also calls for a response. That commentary speaks to how a sentencing court would be justified in sentencing a defendant at the upper limits of the <u>guideline range</u> in reliance on charges dismissed pursuant to a plea bargain. The majority quotes this language in footnote 15 of its opinion, ostensibly to demonstrate that this commentary justifies the result in this case. In fact, the precise language of this commentary speaks only to a sentence at the upper limits of the <u>guideline range</u>. For instance, if the hypothetical guideline range were 63 to 78 months, then the fact that certain charges were dismissed would justify the sentencing court to choose a sentence closer to the ceiling than the floor of the appropriate guideline range. The command of the commentary to U.S.S.G. § 1B1.4 is that sentencing courts have discretion within the guideline range, but cannot substitute one range for another. There is nothing in the commentary to U.S.S.G. § 1B1.4 to justify a departure beyond the guideline range. On the contrary, this

commentary's implication is that departures from the guideline

range based on dismissed charges are actually prohibited.

C.    *Does Considering Dismissed Charges Violate A Defendant's*
         *Reasonable Expectation Of The Plea Bargaining*
*Agreement?*

As a final measure in justifying the departure by the

sentencing court, the majority argues that the plea bargain did

not contain any language that would lead Ashburn to believe that

the dismissed counts would not be used against him in sentencing.

The reason the majority urges this view is that a defendant's

reasonable expectation from the plea bargaining agreement is

constitutionally protected, and that if the prosecution breaches

its agreement with the defendant, then the defendant may demand

specific performance of the agreement or withdraw his plea

altogether.  Santobello v. New York, 404 U.S. 257, 263 (1971).

To avoid this difficulty the majority parses the language of the

plea bargain agreement to find that it "contained no language

that could have led him to believe that the dismissed counts

could not be used as a basis for an upward departure."  In the

plea bargain agreement, the prosecution stated that it would not

prosecute the charges that were dismissed.  Based on this

reading, the majority argues that Ashburn's expectations were met

since it was the sentencing court, and not the prosecution, that

employed the dismissed charges in making a departure.

Since the government promised in the plea bargain agreement

that the robberies that took place on July 17 and 24, 1992 would

not be pursued, the prosecution violated the plea bargain

agreement by presenting Agent Deborah Lynn Eckert's testimony concerning those bank robberies. However, the majority's argument goes further than whether the prosecution crossed a line forbidden by a plea bargain agreement in the testimony of one of its witnesses. More significantly, the majority implies that when a defendant accepts the dismissal of certain charges in return for his guilty plea, he has not bargained for any reduction in prison exposure. Addressing this argument requires a determination of what it means to have a criminal charge "dismissed," or what constructions of the word "dismissed" are reasonable. To answer these questions one must first consider, in broad strokes, what are the consequences of being charged with a crime.

For most persons, being charged with a crime has many consequences: shame, remorse, a reduction in life-chances, loss of freedom, and other associated difficulties. As such, having a criminal charge dismissed brings several benefits to the one charged, not least of which is the avoidance of prison. However, for a defendant facing a multiple count indictment, each additional charge loses its stigmatic quality and simply amounts to the possibility of a lengthier sentence. Once a defendant is at the point were he is poised to admit his guilt, there is little, if any, moral uplift in knowing that two of the four counts that he has been charged with are being dropped. Clearly, a defendant in these circumstances accepts a plea bargain that dismisses certain charges for only one reason: to spend less

time in the penitentiary by not having the dismissed charges counted against him at sentencing.

The majority's argument concerning a defendant's expectations of the consequences of dismissing certain charges in a plea bargain is simply not plausible in light of a realistic awareness and understanding of a defendant's perspective on the effect of dismissing charges. Neither Ashburn, nor any other defendant, would ever agree to a guilty plea if he did not believe, quite reasonably, that the charges being dismissed would not be counted against him at sentencing. The result the majority urges results in the counterintuitive effects apparent in the case of Ashburn's sentencing. For instance, the guideline range for the counts Ashburn actually plead guilty to resulted in an intermediate range of a little under six years. Had he instead been tried and convicted of all four counts, the upper limit of the guideline range he would have been exposed to would have been less than nine years. See, U.S.S.G. § 3D1.1 et. seq. (relating to the guideline's treatment of multiple count offenses). However, the sentence actually imposed on Ashburn, and affirmed by the majority today, is 180 months, or fifteen years. The result, which the majority finds reasonable, is that by entering a plea bargain agreement, Ashburn was given a sentence that was almost twice as long as if he had gone to trial and been convicted on all four counts.

Furthermore, upwardly departing based on the Criminal History Category and dismissed counts is not necessary to achieve

the objectives of the sentencing court in Ashburn's sentence. The sentencing court departed from the guidelines because it believed that Ashburn's Criminal History Category did not accurately reflect the extent of his experience with committing robberies. However, the proper way to address the inadequacy of the sentence was not to factor in the dismissed charges. Instead, the sentencing court should have exercised its powers under Fed.R.Crim.P. 11(e) and rejected the plea bargain if it felt that the agreement was too lenient. If the leniency of the agreement did not become apparent until after the presentence investigation, which very often occurs in the period between the submission of a guilty plea and sentencing, then the sentencing court should have offered Ashburn the opportunity to withdraw his plea.

By rejecting the plea bargaining agreement, the sentencing court could have forced further negotiation between Ashburn and the prosecution, and the parties could possibly have come to an agreement that more accurately reflected the realistic sentencing possibilities Ashburn faced. If Ashburn was to be exposed to additional prison time based on the "dismissed" charges, he should have been so informed, and without this knowledge he could not have knowingly waived his rights in pleading guilty. Trial courts must ascertain that a defendant's guilty plea is made in a knowing and informed manner, Boykin v. Alabama, 395 U.S. 238 (1969); North Carolina v. Alford, 400 U.S. 25 (1970), and with the confusion the majority invites in its opinion by allowing

dismissed charges to creep back in at the sentencing stage, such a knowing and informed waiver is nearly impossible to achieve.

Apart from the patent unfairness of the majority's argument, there are several negative consequences that will flow from it. The most significant of these is the impact it will have on the plea bargaining process. The plea bargain is an essential component of our criminal justice system, by which all involved benefit. In exchange for a guilty plea, the government promises the defendant that it will either drop certain charges or down-grade the offense charged. In return, the defendant pays for whatever benefit he receives with his cooperation. By agreeing to a plea bargain, the defendant waives several rights, most prominent of which is the right to trial by jury. Plea bargains also benefit society as a whole, since guilty pleas reduce the number of cases on our overburdened court dockets. Our system of criminal justice has come to depend on defendants foregoing their right to a jury trial; if each criminal defendant, regardless of the merits of his case, were to insist on his right to a jury trial, our courts would not be able to function. Studies have supported the efficacy and centrality of the plea bargaining process to our criminal courts. See, Milton Heumann, Plea Bargaining 24-35 (1977) (setting forth empirical evidence that plea bargaining is less a response to case pressure than a rational method for the resolution of criminal innocence or guilt).

It is indisputable that the plea bargain benefits all

involved, and is vital to the maintenance of order in our criminal justice system. However, the majority's reasoning will make plea bargaining a much more unstable and haphazard process. Defendants and their counsel will be unable to properly evaluate the consequences of a plea bargaining agreement, for they will never know if the sentencing court will disregard the parties' compact by considering charges that both the prosecution and defense agreed would not be a factor at sentencing. Obviously, when faced with such a decision, many defendants who would otherwise admit their guilt and accept their sentence will find it more attractive to test the prosecution's case at trial.

III

The majority's conclusion that the departure justifications were adequate is also unsupportable. This court has previously outlined the procedure for making such a determination in United States v. Lambert, 984 F.2d 658 (5th Cir. 1993) (en banc). In Lambert, this court held that a departure will be affirmed if the sentencing court offers acceptable reasons for its departure and if said departure is reasonable. Id. at 663. In order to depart under U.S.S.G. § 4A1.3, a sentencing court should first consider increasing the defendant's Criminal History Category to the next level, and if that is not satisfactory, then each subsequent level should be considered. Id. at 661. Also, Lambert called on a sentencing court to state for the record why the criminal history category provided by the guidelines was inappropriate, and why the category it chooses is appropriate. Id. at 663.

However, recognizing the complexities inherent in setting a sentence appropriate to every defendant, "we do not … require the district court to go through a ritualistic exercise in which it mechanically discusses each criminal history category it rejects en route to the category it selects."  Id.

A.   *Were The Sentencing Court's Departure Justifications Adequate?*

The sentencing guidelines are an ambitious attempt to impose order on a process that many felt was too chaotic.  Sentencing a fellow human being is a demanding process that requires evaluating deeds, demeanor and circumstances that elude quantification.  Nevertheless, the guidelines are an effort to achieve that ideal for the sake of equity, and wisely, the guidelines recognize that it is not possible to envision all of the factors that go into a criminal sentence.  As such, they permit departures where these extraordinary and unforeseen factors are present.  However, in order to avoid making a sham of the noble goal of the guidelines, some degree of articulation is required for a departure to be considered reasonable.  The threshold of reasonableness required by the guidelines was not met by the sentencing court in this case.

In justifying its decision to depart, the sentencing court used an economy of speech that left much to the imagination.  The actual transcript of the rationale provided by the sentencing court occupies approximately one and one-half, double-spaced, typed pages.  The sentencing court first announced that it was

28
28

going to depart, and then stated that if the defendant had been convicted of the two dismissed counts, his Criminal History Category would be V instead of II. Then the sentencing court stated that if the robberies the defendant committed "in the early 1980s" were taken into account, Ashburn's Criminal History Category would increase to level VI. The sentencing court also made a cryptic allusion to several "attempted robberies" that it was also taking into consideration. Since the sentencing court felt that the defendant's current Criminal History Category did not adequately reflect these aspects of Ashburn's background, it decided that a "rather drastic upward departure" was in order.

It is true that Lambert does not require the sentencing court to "go through a ritualistic exercise in which it mechanically discusses each Criminal History Category it rejects en route to the category that it selects." Id. at 663. Yet what the sentencing court provided here barely amounts to a recitation of the obvious. Striped of what little preamble the sentencing court provided, the departure amounted to a mention of the defendant's previous criminal activity and a conclusion that these past acts demonstrate that it should upwardly depart from the guidelines due to the "likelihood the defendant will commit other crimes" and "the seriousness of his past criminal conduct." These phrases are, almost verbatim, the ones found in the policy statement to U.S.S.G. § 4A1.3: an upward departure "is warranted when the Criminal History Category significantly under-represents the seriousness of the defendant's criminal history or the

29

likelihood that the defendant will commit further crimes," (emphasis provided). Essentially, the sentencing court repeated the exact phrases found in the guidelines. I think that the reasonableness requirement for departure justifications requires more that a mere recital of the same words that authorize a departure. If that is all that is required, then any explanation for departures is a meaningless exercise, and a noble goal of the sentencing guidelines is in jeopardy.

It is inherent in the exercise of reviewing the adequacy of departure justifications that reasonable minds will differ. However, if the explanations provided by the sentencing court here are reasonable, then virtually nothing can be characterized as unreasonable. The cursory justifications provided by the sentencing court in this case are particularly problematic when one considers the degree of the departure. As the majority noted, Lambert anticipated a narrow class of cases where the departure is so great as to require a detailed explanation of the reasons for the departure. The majority then blithely states that the departure here was not of the magnitude required to invoke the additional Lambert scrutiny. However, Ashburn was given a sentence that was practically triple that which he would have been subjected to under the guidelines. Again, if the departure here was not sufficiently marked to justify a careful accounting of the reasons for the deviation, then I fail to see what kind of departure does justify a Lambert elaboration.

B.   *Propriety Of The Grounds For The Departure*

30

Not only are the explanations provided by the sentencing court insufficient to justify a departure of such magnitude, but there are also difficulties with the explanations themselves. For example, the sentencing court relied on the "robberies that occurred back in the early 1980s" in raising Ashburn's already augmented Criminal History Category from level V to level VI. It is assumed that these "early 1980s" robberies the sentencing court referred to were the crimes Ashburn was charged with in his 1984 conviction for armed bank robbery. Ultimately he was convicted of one count of armed bank robbery, and the other charges were dismissed. It is unclear from the sentencing court's explanation whether it relied on the robbery Ashburn was ultimately convicted on in 1984. If this were the case, that conviction would have been counted twice, as Ashburn's presentence report already gave him three criminal history points for this 1984 conviction. Such double counting would be improper, yet one cannot deduce whether the sentencing court relied on the 1984 conviction due to the paucity of its explanations.

There is one other difficulty with the propriety of the reasons asserted by the sentencing court in justifying its upward departure. The sentencing court relied, in part, on the two charges that the plea bargain dismissed, and one other unindicted robbery Ashburn allegedly committed. For each of these items, the sentencing court added three criminal history points. However, by assessing three criminal history points for each of

these items, they are being treated as if they were full-fledged convictions. The problem with this approach is that it fails to distinguish between previous convictions (which also merit three criminal history points) and other events ranging from dismissed counts to conduct the prosecution may never have intended to be a basis for an indictment. It is not clear that U.S.S.G. § 4A1.3(e) permits ascribing the same number of criminal history points to past criminal conduct as to prior convictions. If this were the case, then what would be the point in defining what a prior conviction is and basing the Criminal History Category on prior convictions.

IV

In closing, I would like to point out that some of the issues in this case have caused a circuit split. The circuits have split over whether dismissed charges may be used to augment the Criminal History Category. The Second and Tenth Circuits have held that dismissed charges may be so used. See, United States v. Kim, 896 F.2d 678 (2nd Cir. 1990); United States v. Zamarripa, 905 F.2d 337 (10th Cir. 1990). Conversely, the Third and Ninth Circuits have held that such a use is not permitted. See, United States v. Thomas, 961 F.2d 1110 (3rd Cir. 1992); United States v. Castro-Cervantes, 927 F.2d 1079 (9th Cir. 1990). Hard cases make bad law. All would admit that this case is hard because the defendant is not a sympathetic character. However, the nature of the defendant's acts seem to overshadow the consideration of sections, commentaries and policy statements of

32

the sentencing guidelines, and the circumvention of this body of
rules leads the majority to create bad law.  For these reasons, I
respectfully dissent.

HAROLD R. DeMOSS, Jr., Circuit Judge, with whom, GOLDBERG,
Circuit Judge, joins, dissenting:

I join in all that Judge Goldberg has stated in his
comprehensive dissent, and add these additional words of dissent
because I feel so strongly that the district judge, and my
colleagues in the majority opinion, are in error in their
justification of the basis for, and quantum of, the upward
departure by the district judge in this case.

On page 8 of the government's supplemental en banc brief,
there is a verbatim quotation of the transcription of the
district judge's explanation at the sentencing hearing for why he
was departing upward.  As I read that text, it seems clear that
the district judge relied on two sets of circumstances:

A.  The robbery in December 1991 (count 1 of the indictment
    which was dismissed), the robbery in January 1992
    (count 2 of the indictment which was dismissed), and
    the robbery in 1993 (un-indicted and the government
    agreed not to indict), which would add three criminal
    history points each "if he [Ashburn] had earlier been
    convicted of these robberies" [emphasis added]; and

B.  The robberies "that occurred back in the early 1980's"
    which "if taken into account" would push Ashburn's
    criminal history past category VI.

In approving the upward departure, the majority opinion relies
primarily on Section 4A1.3(e) which permits consideration of
"prior similar adult criminal conduct not resulting in a criminal
conviction" in making such an upward departure.

I have serious doubts as to the propriety of the district

judge's reliance on the three robberies described in sub-paragraph "A" above.  First of all, the robberies in 1991 and 1992 constituted counts 1 and 2 of the same indictment under which Ashburn is being sentenced.  The plea agreement expressly provided that those two counts be dismissed, and to assume convictions on those counts as the district judge did, violates the express terms of the plea agreement.  Secondly, if a sentencing judge assumes conviction on dismissed counts, you no longer have "conduct not resulting in a criminal conviction" as defined in sub-part (e).  Rather you have additional convictions under a multi-count indictment which would necessitate processing under Section 3D1.1 et seq. relating to multiple counts; and the effects of those additional convictions would show up, not in the criminal history table, but in the determination of "combined offense level" (see example 1 on page 246 of the 1993 Guidelines Manual).  In this case, the net result of including counts 1 and 2 in the determination of combined offense level would be to move the offense level up two steps from 25 to 27; with no change in the criminal history category of II, the guideline range would be 78 to 97.

     Finally, to assume conviction as to the dismissed counts and then attribute three criminal history points for each assumed conviction, just as you would for an actual prior conviction, renders the point structure as defined by the guidelines for determining criminal history utterly meaningless.  In short, if "prior similar adult conduct not resulting in a conviction" can

be ascribed the same number of points as assigned to an actual prior conviction, there is no distinction between the two.

Under Rule 11(e) of the Federal Rules of Criminal Procedure, the district judge may accept or reject a plea agreement which provides for dismissal of counts or charges. That Rule further gives the judge the right to "defer his decision as to the acceptance or rejection until there has been an opportunity to consider the presentence report." It is apparent in this case that after reading the presentence report, the district judge felt the defendant was getting off too light. In my view, the district judge's remedy then is to reject the plea agreement and force the defendant to plead guilty to all counts of the indictment or stand trial and risk conviction on all counts. In either of those alternative events, the multiple count analysis under section 3D1.1 et seq. would have been required to determine the resulting sentence, and that analysis focuses on the combined offense level and not criminal history. Instead, the district judge decided to upwardly depart on the basis of "assumptions," which I find clearly erroneous, and to an extent that produces a sentence which is double what would have been the guideline sentence had the defendant in fact pleaded guilty to all four counts.

These same criticisms are equally applicable to the district judge's use of the "robberies back in the early 1980s" described in Subparagraph B. above as justification for taking Ashburn's criminal history "past Category VI." As in the instant

35
35

prosecution, Ashburn pled guilty in 1984 to one count of a multi-count indictment charging various events of bank robbery and the remaining counts were dismissed. So, not only do we have dismissed counts of the current indictment but also dismissed counts of a prior indictment, which was the source of a prior conviction, being used as the basis for determination of "prior adult similar conduct." Given the proclivity of prosecutors to file multi-count indictments and the frequency with which some of those counts get dismissed pursuant to plea bargains, there is a veritable "mother lode" of upward adjustments awaiting to be mined out of Section 4A1.3(e) if the district judge's application is correct. The majority seeks to bless its affirmance of the district judge's interpretation in this case by stating that it is joining the Tenth Circuit and the Second Circuit in holding that prior criminal conduct related to dismiss counts of an indictment may be used to justify an upward departure. That blessing is misplaced in this case for nothing in Zamarripa (Tenth Circuit) nor Kim (Second Circuit) dealt with dismissed counts of prior indictments in the criminal history; and our court therefore is making completely new law as to the "robberies in the early 1980s" in this case. I respectfully suggest that such new law is not contemplated by the guidelines and will turn Section 4A1.3(e) into a Pandora's box, the opening of which we will come to regret.

Furthermore, as indicated in Subparagraph B. above, the district judge was even more cryptic in articulating his thought

process as to the "early 1980s robberies" than he was as to the counts described in Subparagraph A.  He simply said "If taken into account", these 1980s robberies would push the criminal history category past Category VI.  He gave no indication of the number of robberies he "took into account" nor did he indicate the points per robbery he allocated as he did in describing the other robberies in Subparagraph A. above.  He made no attempt to articulate any special circumstances about the "early 1980s robberies" which persuaded him to make an adjustment.  So, simply by stating he took these early 1980 robberies into account, the district judge departed further upward from the guideline range of 100 - 125 months (O.L. 25 - C.H. V) to 151 - 188 months (O.L. 29 - C.H. VI) to reach the ultimate sentence of 180 months.  The majority opinion rationalizes its approval of the district judge's articulation of his reasons by citing portions of Lambert abjuring "ritualistic exercises" and by pointing out that on a percentage basis the upward departure in this case is not that different from the upward departure approved in Lambert.  But in the real terms of months and years to be served in prison, the departure in this case from an initial guideline range of 63 - 78 months (5 - 6-1/2 years) to a final sentence of 180 months (15 years) is the very kind of departure we had in mind when we stated in Lambert:

> "In a very narrow class of cases, we can conceive that the district court's departure will be so great that, in order to survive our review, it will need to explain in careful detail, why lesser adjustments in the defendant's criminal history score would be

inadequate."  Page 663.

I respectfully dissent from the conclusion that the district judge satisfied <u>Lambert</u>.