**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Tonda Watkins WRIGHT,**
**Defendant–Appellant.**

No. 95–6677.

United States Court of Appeals,
Sixth Circuit.

Submitted: Dec. 6, 1996.

Decided: July 15, 1997.

Michael E. Winck, Asst. U.S. Attorney, Office of the U.S. Attorney, Knoxville, TN, Wayne A. Rich, Jr., Asst. U.S. Attorney, (briefed), Office of the U.S. Attorney, Chattanooga, TN, for Plaintiff–Appellee.

Deirdra J. Brown (briefed), Federal Defender Services of Eastern Tennessee, Inc., Chattanooga, TN, for Defendant–Appellant.

Before: ENGEL, MERRITT, and MOORE, Circuit Judges.

**OPINION**

MOORE, Circuit Judge.

Tonda Watkins Wright appeals her sentence, imposed after a guilty plea. Wright argues that the district court erred in applying UNITED STATES SENTENCING GUIDELINES MANUAL (U.S.S.G.) § 3A1.3 (1994), "Restraint of Victim," because the restrained person was not a victim. She also argues that the district court erred in departing upward by four levels. For the reasons set forth below we reject both arguments and affirm her sentence.

## I. FACTS

This case has its origins in a crack-cocaine-selling operation that Wright and co-defendants Chaston Cross and Perry Thomas conducted out of Wright's apartment in early 1995. On February 8 of that year, the three left the apartment, and three rocks of crack, in the care of Larry Lovelace, an associate of theirs who kept house for Wright and a number of her neighbors in exchange for drugs. Joint Appendix (J.A.) at 77–78, 89. When Wright and her friends returned, some of the crack was missing; Wright accused Lovelace of stealing it, J.A. at 78, and told Cross to lock the door and to hold Lovelace down while she heated a pair of scissors on the stove. J.A. at 82–84. Wright then spent several hours burning Lovelace with the hot scissors, pouring rubbing alcohol on his wounds and mouth, and forcing him to eat dog feces. J.A. at 82–83, 114, 123. During this torture Cross held Lovelace down while Thomas guarded the door and threatened to sic Wright's dogs on him. J.A. at 74–75.

Lovelace eventually escaped from his tormentors and took refuge with a friend, who called an ambulance. Judgment Proceedings Trans. at 51–52. Local police interviewed Lovelace at the hospital; the state brought charges against the three defendants but dismissed the case when a federal grand jury handed down a nine-count indictment charging the three with various drug-related charges. J.A. at 16–20 (Indictment); J.A. at 33.

The federal indictment charged Cross, Thomas, and Wright with various counts of conspiracy to distribute crack cocaine, distribution and possession with intent to distribute the same, and use of a firearm during and in relation to a drug offense. J.A. at 16–20 (Indictment). Wright entered a plea of guilty to one count of conspiring to distribute cocaine; the rest of the counts were dismissed under the plea agreement. J.A. at 25–27 (Plea Agreement).

At the sentencing hearing Lovelace testified as to the torture, and the defendants introduced his prior testimony from a state preliminary hearing in which he had de-

scribed the events but had not mentioned rubbing alcohol or dog feces. The court made findings of fact, J.A. at 101–05, and imposed a sentence of 120 months. J.A. at 107. In doing this the court made two upward adjustments from the base level. First, the court held that U.S.S.G. § 3A1.3 applied because Wright had restrained Lovelace. J.A. at 102. Second, the court departed upward by four levels because it found that Wright had tortured Lovelace. J.A. at 105. Wright appeals both of these decisions.

## II. DISCUSSION

### A. Definition of "a Victim" under U.S.S.G. § 3A1.3.

■■■ Wright argues first that U.S.S.G. § 3A1.3, which provides for a two-level increase "[i]f a victim was physically restrained in the course of the offense," is inapplicable in this case because Lovelace was not the victim of the offense charged. We disagree.

Section 3A1.3 refers to "a victim"; there is no doubt that Lovelace was a victim of torture. When the Sentencing Commission intends to limit a victim-related adjustment's applicability to the victim of the offense of conviction, it does so explicitly. *See* U.S.S.G. § 3A1.1 (providing for adjustment where "a victim of the offense was unusually vulnerable"); U.S.S.G. § 3A1.2(a) ("If ... the victim was a government officer ... and the offense of conviction was motivated by such status ....."); *id.* § 3A1.2 commentary, applic. note 1 ("This guideline applies when specified individuals are victims of the offense."). Every court that has examined § 3A1.3 has concluded that the enhancement may be applied regardless of whether the person restrained was the victim of the offense of conviction. *See United States v. Gaytan,* 74 F.3d 545, 560 (5th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 77, 136 L.Ed.2d 36, and *cert. denied,* —— U.S. ——, 117 S.Ct. 506, 136 L.Ed.2d 397 (1996); *United States v. Vought,* 69 F.3d 1498, 1502 (9th Cir.1995). Because Wright has given us no reason to think that the Sentencing Commission intended otherwise, we agree with these courts that there is no reason to restrict the scope of § 3A1.3 to cases in which the restraint involved the victim of the offense of conviction.

### B. The Validity of the Four-Level Upward Departure

■■■ Wright next argues that the court erred in departing upward based on its finding that Wright had tortured Lovelace. We review the propriety of a departure from the sentencing guidelines for abuse of discretion. *United States v. Valentine,* 100 F.3d 1209, 1210 (6th Cir.1996). An "error of law in the interpretation or application of the guidelines constitutes an abuse of discretion." *Id.* Findings of fact are reviewed under a clearly erroneous standard. *United States v. Mahaffey,* 53 F.3d 128, 131 (6th Cir.1995).

The district court departed upward by four levels based alternatively on guideline §§ 5K2.8 (extreme conduct) and 5K2.2 (physical injury). J.A. at 105. The court relied on § 2A2.2(b)(3)(B), by analogy, to help determine how many levels to depart. The court also made findings to support the departure:

1. That Lovelace "felt threatened by the existence of" a pair of Rottweiler dogs which Wright kept in her bathroom.

2. That Wright had either directly or indirectly (i.e., by directing someone) poured rubbing alcohol on Lovelace's burns and in his mouth and attempted to force him to eat dog feces.

3. That Lovelace was "a credible witness" who was "a little bit afraid of the situation" and "might even be a little bit embarrassed."

4. That Lovelace was "severely injured as a result" of the burning.

J.A. at 104.

■■■ Wright makes two arguments in suggesting that there was an abuse of discretion. First, she asserts that Lovelace was an unsavory character, and thus not entitled to the protection of the laws. Appellant's Br. at 15–16. This offensive argument finds no support in the law; in addition, the district judge specifically found Lovelace to be pitiable, not despicable. J.A. at 104. The argument fails.

■■■ Wright also argues that she did not make Lovelace eat alcohol or feces. Appellant's Br. at 16. She tried at trial, and

continues to try here, to impeach Lovelace's testimony to the contrary by showing that he did not mention this disgusting aspect of the torture session at the hospital or at the state preliminary hearing. *See* J.A. at 115–18; J.A. at 116, 125, 132–37 (Medical Report). There is, however, plenty of evidence to support the court's finding that this did, in fact, occur. *See* J.A. at 114 (testimony of Officer Hinton that Lovelace told him on several occasions that the conduct had occurred); J.A. at 124–25 (Lovelace testimony). As noted above, the district court found Lovelace to be a credible witness; such determinations are for the district judge to make. Furthermore, in light of the court's finding that Lovelace was scared and embarrassed, it is not surprising that he may have been reluctant to mention the most degrading parts of the experience. In short, the district court's findings as to this are not clearly erroneous.

■ The only remaining question is whether the district court abused its discretion in departing upward by four levels. The court properly held that some sort of departure was justified because "restraint of victim" did not adequately cover torture. J.A. at 103. *See Koon v. United States,* —— U.S. ——, ——, 116 S.Ct. 2035, 2044, 135 L.Ed.2d 392 (1996) ("the Act authorizes district courts to depart in cases that feature aggravating or mitigating circumstances of a kind or degree not adequately taken into consideration by the Commission"); U.S.S.G. § 5K2.0 (policy statement). The court noted that § 5K2.8 (extreme conduct) explicitly covers "torture of a victim, gratuitous infliction of injury, or prolonging of pain or humiliation," and found as a matter of fact that Lovelace had experienced torture, pain, and humiliation. J.A. at 105. The court next noted that § 5K2.2 (physical injury) would also justify a departure, because Lovelace's "multiple burns" were a serious permanent injury. J.A. at 105–07. The text of these sections explicitly covers Wright's conduct, and departing upward on the basis of any or all of the provisions was correct.

■ Because the above provisions provide no guidance as to how far to depart, the court then analogized to § 2A4.1 to decide how far to depart. That section applies to cases where the base conduct is kidnapping or unlawful restraint and directs courts to increase the sentence by four levels "[i]f the victim sustained permanent or life-threatening bodily injury." U.S.S.G. § 2A4.1(b)(2)(A). The court also noted that § 2B3.1 provides for a four-level increase in robbery cases where there is "serious bodily injury." U.S.S.G. § 2B3.1(b)(3)(B). Either of these provisions would justify the four-level enhancement. *Cf. id.* § 2B3.1(b)(3)(C) (six-level increase for permanent or life-threatening bodily injury during robbery). In addition, the court specifically found that Lovelace had suffered humiliation and torture in addition to the serious and permanent physical harm. There was no abuse of discretion.

## III. CONCLUSION

For the reasons stated above, Wright's sentence is AFFIRMED.