**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Chaston CROSS (96–5218); Perry Thomas
(96–5219), Defendants–Appellants.**

Nos. 96–5218, 96–5219.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 17, 1996.

Decided July 29, 1997.

Wayne A. Rich, Jr. (argued and briefed), Office of the U.S. Attorney, Chattanooga, TN, for Plaintiff–Appellee.

Jimmy F. Rodgers, Jr. (argued & briefed), Jerry H. Summers (briefed), Summers, McCrea & Wyatt, Chattanooga, TN, for Defendant–Appellant Chaston L. Cross.

Lloyd A. Levitt (argued and briefed), Phil-·lips & Caputo, Chattanooga, TN, for Defendant–Appellant Perry Thomas.

Before: ENGEL, MERRITT, and MOORE, Circuit Judges.

## OPINION

MOORE, Circuit Judge.

Defendants-Appellants Perry Thomas and Chaston Cross appeal prison sentences entered pursuant to guilty pleas. For the reasons stated below, we affirm Thomas's sentence but vacate Cross's sentence and remand for resentencing.

## I. FACTS

This rather gruesome case has its origins in a cocaine-selling operation that Thomas, Cross, and co-defendant Tonda Wright conducted out of Wright's apartment in early 1995. On February 8 of that year the three left the apartment—and three rocks of crack cocaine—in the care of Larry Lovelace, an associate of theirs who kept house for Wright and a number of her neighbors in exchange for drugs. Joint Appendix (J.A.) at 136–37, 148. When Wright and her friends returned, some of the crack was missing; Wright accused Lovelace of stealing it, J.A. at 137, and told Cross to lock the door and to hold Lovelace down while she heated a pair of scissors on the stove. J.A. at 141–43. Wright then spent several hours burning Lovelace with the hot scissors, pouring rubbing alcohol on his wounds and mouth, and forcing him to eat dog feces. J.A. at 141–42, 217, 257. During this torture Cross held Lovelace down while Thomas guarded the door and threatened to sic Wright's dogs on him. J.A. at 133–34.

Lovelace escaped from his tormentors when a neighbor heard his screams and came to investigate. J.A. at 66. He took refuge with a friend, who called an ambulance. J.A. at 255–56. Local police interviewed Lovelace at the hospital; the state brought charges against the three defendants but dismissed the case when a federal grand jury handed down a nine-count indictment charging the three with various drug-related charges. J.A. at 17–20 (Indictment); J.A. at 36.

The federal indictment charged Cross, Thomas, and Wright with various counts of conspiracy to distribute crack cocaine, distribution and possession with intent to distribute the same, and use of a firearm during and in relation to a drug offense. J.A. at 17–21 (Indictment). Thomas pleaded guilty to Count One of the indictment, conspiracy to distribute crack, in violation of 21 U.S.C. §§ 841(a)(1), 846. J.A. at 92. Cross pleaded guilty to Count Three, distribution of crack, in violation of 21 U.S.C. § 841(a)(1). J.A. at 98. The other counts were dismissed pursuant to the plea agreements. J.A. at 92, 97.

Both Cross and Thomas took issue with several of the factual and legal assertions in the presentence reports; at the sentencing hearing Lovelace testified as to the defendants' conduct, and the defendants tried to impeach his testimony with prior testimony from a state preliminary hearing. After making extensive findings of fact, the court sentenced Thomas and Cross to 46 and 87 months in prison, respectively. J.A. at 394, 95. In imposing these sentences the court adjusted both defendants' base offense levels upward by two levels for restraint of victim, under U.S.S.G. § 3A1.3, and then departed upwards by four levels to account for the

torture, under U.S.S.G. § 5K2.8,[1] cruel, brutal or degrading conduct, or in the alternative § 5K2.2, physical injury to victim. These adjustments and departures form the basis for the instant appeals.

## II. DISCUSSION

### A. Perry Thomas

**1. Whether Thomas's Conduct Supported an Enhancement under U.S.S.G. § 3A1.3, Restraint of Victim**

■ Thomas first argues that the district court erred in increasing his offense level under U.S.S.G. § 3A1.3, which reads, "[i]f a victim was physically restrained in the course of the offense, increase by 2 levels." He first asserts that the district court's findings of fact were clearly erroneous, but he does not specify which findings were wrong. *Cf. United States v. Mahaffey*, 53 F.3d 128, 131 (6th Cir.1995) (reviewing sentencing court's factual findings for clear error). The court summarized its findings:

> With respect to Mr. Thomas ... I think that the evidence is clear. I've heard it twice now from Mr. Lovelace. I've seen all these various statements. I think Mr. Thomas was a participant in this. He perhaps was not as much of an active participant in that he didn't hold Mr. Lovelace down, but I do think that based upon all that I've heard that Mr. Thomas was an active participant in it, if not a hands-on participant, then at least a verbal threatening participant with respect to the torture....
>
> ....
>
> And I find that Mr. Thomas ... participated in threatening Mr. Lovelace with releasing those dogs and by standing at the door controlling access. So I have no

difficulty in concluding that these defendants participated in the torture. J.A. at 382–83. We find no clear error in any of this; all of the findings are supported by evidence in the record, some of which we set out in the margin.[2] Further, we do not see precisely where Thomas's disagreement with these findings lies; he seems to concede that the evidence showed that he threatened Lovelace. Thomas Br. at 9 (arguing that "the great weight of the testimony was that [Thomas] at most made some threats toward Mr. Lovelace"). We uphold the district court's factual findings.

■ We also uphold the district court's determination that Thomas is legally responsible for physically restraining Lovelace under § 3A1.3. The sentencing court must include as relevant conduct all acts or omissions aided or abetted by the defendant during the commission of the offense of conviction. U.S.S.G. § 1B1.3(a)(1)(A). A defendant who assists or encourages another to commit a substantive crime is liable for aiding and abetting. *United States v. Ledezma*, 26 F.3d 636, 642 (6th Cir.), *cert. denied*, 513 U.S. 942, 115 S.Ct. 349, 130 L.Ed.2d 305 (1994). The district court found that Thomas actively assisted and participated in the torture by guarding the door and threatening Lovelace; Thomas pleaded guilty to conspiring with Wright and Cross to distribute cocaine until February 8, 1994, the date of the torture. The court did not err in holding Thomas responsible for restraining Lovelace.[3]

**2. Whether Thomas's Participation in the Torture Supported a Four-level Upward Departure**

■ Thomas also claims that the district court erred in departing upward under

---

1. Although, as Cross notes, some of the district court documents indicate that § 5K2.3, rather than § 5K2.8, was the alternate basis for the upward departure, any error was harmless. The court's statement at the sentencing hearing, J.A. at 389, and the amended judgment, J.A. at 80, both indicate that § 5K2.8 was used. The presentence report (PSR) suggests that both provisions might be appropriate. J.A. at 72.

2. J.A. at 134, 35 (Lovelace testimony in state proceeding) (Thomas "was making threats at me" and "was blocking me [to] make sure I wouldn't get out"; "they kept threatening to put

the dogs on me"); J.A. at 236 (testimony of U.S. Probation Officer Turney) (Lovelace told him that Thomas "blocked another exit ... so he couldn't go out through the back" and had threatened to release Rottweiler dogs on him.).

3. Similar reasoning would likely lead us to conclude that U.S.S.G. § 1B1.3(a)(1)(B) (jointly undertaken activity) would lead to the same result. *See also United States v. Stokley*, 881 F.2d 114, 116 (4th Cir.1989) (blocking door itself constitutes restraint of victim under § 3A1.3).

U.S.S.G. §§ 5K2.2 and 5K2.8, based on Thomas's participation in the torture. We first dispose of his argument that the guidelines do not allow an upward departure based on aiding and abetting liability: § 1B1.3(a)(1)(A) makes it clear that the Commission has determined that criminals should be held responsible for aiding and abetting, and conduct that is relevant under § 1B1.3 but is more extreme than what the applicable guidelines contemplate may form the basis for an upward departure. *See* U.S.S.G. § 5K2.0 (policy statement).

■ We also reject Thomas's argument that a four-level increase was excessive. We review for abuse of discretion the district court's decision of whether, and how far, to depart upward. *United States v. Valentine*, 100 F.3d 1209, 1210 (6th Cir.1996). Torture goes far beyond mere physical restraint and is not part of a usual drug conspiracy; the decision to depart was entirely proper. *See* U.S.S.G. § 5K2.8. ("If the defendant's conduct was unusually heinous, cruel, brutal, or degrading to the victim, the court may increase the sentence above the guideline range to reflect the nature of the conduct. Examples of extreme conduct include torture of a victim, gratuitous infliction of injury, or prolonging of pain or humiliation."); *id.* § 5K2.2 (allowing departure for "significant physical injury"); *Koon v. United States*, —— U.S. ——, ——, 116 S.Ct. 2035, 2044, 135 L.Ed.2d 392 (1996) (Sentencing Reform "Act authorizes district courts to depart in cases that feature aggravating or mitigating circumstances of a kind or degree not adequately taken into consideration by the Commission."); U.S.S.G. § 5K2.0. Departure was proper under either provision.

■ Nor was four levels an unduly large departure. As the district court noted, several guidelines provisions call for a four-level increase where conduct results in serious physical injury. *See* U.S.S.G. § 2B3.1(b)(3)(B) ("serious bodily injury" during robbery); *id.* § 2A4.1(b)(2) ("permanent or life-threatening bodily injury" in kidnap-

ping or unlawful restraint case). *Cf. id.* § 2B3.1(b)(3)(C) (six-level increase for permanent bodily injury during robbery). The court specifically found that the multiple burns inflicted on Lovelace constituted a serious permanent injury and that the defendants had deliberately humiliated him. J.A. at 273–74, 381. These findings justified the four-level increase. Nor was it an abuse of discretion for the court to give Thomas the same four-level departure that it gave Wright, the ringleader: the guidelines do not require any distinction between principals and accomplices, *see* U.S.S.G. § 1B1.3(a)(1) (accomplice liability in calculating offense level). We affirm in full Thomas's sentence.[4]

### B. Chaston Cross

Cross's appeal presents more difficult issues, in large part because he pleaded guilty only to a single count of distributing cocaine, not to the conspiracy count. We address his arguments in turn.

### 1. Whether the Torture of Lovelace Was Relevant Conduct to Cross's Offense of Conviction under U.S.S.G. § 3A1.3

■ Cross argues that his participation in the torture was not closely enough related to his offense of conviction to constitute relevant conduct under U.S.S.G. § 1B1.3. After examining the question de novo, *see United States v. Roxborough*, 99 F.3d 212, 214 (6th Cir.1996), we agree that the district court's factual findings do not support a holding that the torture was relevant conduct, and we therefore remand for resentencing.

Cross pleaded guilty only to Count Three of the indictment, distributing crack cocaine on December 28, 1994. This count named Cross as the only defendant. J.A. at 19 (Indictment). The torture of Lovelace took place on February 8 of the following year.

U.S.S.G. § 1B1.3(a) defines relevant conduct for the purposes of calculating the base offense level, offender characteristics, and adjustments such as the one at issue here under § 3A1.3 for restraint of victim. Sec-

---

4. Thomas received 46–month sentence, much less than Cross's (87 months) or Wright's, (120 months). *See* J.A. at 25 (Thomas Judgment), 55 ( Cross Judgment), 276 (imposition of sentence

on Wright). Part of the reason for Thomas's lighter sentence is that he and Cross were not given the upward adjustment for being a leader that Wright received. *See* J.A. at 387.

tion 1B1.3(a) states in relevant part that these levels

shall be determined on the basis of the following: all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant ... *that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.*

U.S.S.G. § 1B1.3(a)(1)(A) (emphasis added). The February 8 torture could not have occurred during or in preparation for the offense of conviction, which took place six weeks earlier. The only evidence that the torture was an attempt to avoid detection or responsibility for anything is a statement by the probation officer that "Lovelace also mentioned some things about [his] possibly being the informant. At this time Ms. Wright just said, Mr. Lovelace told me that she said she was going to make him an example." J.A. at 236. The court never found, or even suggested, that the torture was an attempt to hide Cross's December 28 offense. *See* J.A. at 381–85 (findings). We therefore cannot affirm the sentence under § 1B1.3(a)(1)(A). *Roxborough,* 99 F.3d at 214. For this same reason, § 1B1.3(a)(1)(B), which applies "in the case of a jointly undertaken criminal activity," is also inapplicable. *Roxborough,* 99 F.3d at 215.

The next portion of the relevant conduct provision, U.S.S.G. § 1B1.3(a)(2), allows the use of acts that are "part of the same course of conduct or common scheme," but applies only to offenses which should be grouped under § 3D1.2(d). Section 3D1.2 requires that "[a]ll counts involving substantially the same harm shall be grouped together," and § 3D1.2(d) allows grouping "[w]hen the offense level is determined largely on the basis of the total amount of harm or loss" and in similar circumstances. Although the offense of conviction was a drug offense, and is thus groupable under this provision, torture clearly falls outside the scope. U.S.S.G. § 3D1.2 commentary, applic. note 6; *United States v. Kim,* 896 F.2d 678, 687 (2d Cir.1990); William W. Wilkins, Jr. & John R. Steer, *Relevant Conduct: The Cornerstone of the Feder-*

*al Sentencing Guidelines,* 41 S.C.L. REV. 495, 514 (1990) (Section 1B1.3(a)(2) covers offenses involving fungible items; "violent offenses ... are not included."). Section 1B1.3(a)(2) does not apply to this case.

Nor does the conduct fall within the bounds of § 1B1.3(a)(3), which includes as relevant conduct "all harm that resulted from the acts and omissions specified in subsections (a)(1) and (a)(2) above, and all harm that was the object of such acts and omissions." U.S.S.G. § 1B1.3(a)(3). As noted above, (a)(2) does not apply at all. The acts and omissions in (a)(1) are those taken in the course of, or in the avoidance of, the offense of conviction, and the court made no findings linking the events of February 8 with Cross's crack cocaine sale on December 28 of the previous year. We therefore cannot say that the torture resulted from any acts related to Cross's offense of conviction. Finally, although § 1B1.3(a)(4) allows the consideration of "any other information specified in the applicable guideline," § 3A1.3 (the applicable guideline for restraint of victim) by its terms applies only when the restraint occurred "in the course of the offense."

As none of the provisions of § 1B1.3 apply, the torture was not "relevant conduct" as to Cross's offense of conviction, and we must vacate Cross's sentence and remand for the district court either to resentence Cross without the enhancement for restraint of victim under § 3A1.3 or to develop a factual record to justify the inclusion of the torture as relevant conduct.

**2. Whether the Torture of Lovelace Was Related to Cross's Offense of Conviction so as to Allow an Upward Departure Based on that Conduct**

■ Cross's next argument differs only slightly from the one just discussed: that the connection between his offense of conviction and the abuse of Lovelace was insufficient to allow the district court to use the torture to enhance the sentence under U.S.S.G. § 5K2. We agree that this, too, requires a remand for further factual findings.

In deciding whether to depart from the guidelines, district courts may consider more than just "relevant conduct," as defined in

§ 1B1.3. *See* U.S.S.G. § 1B1.4; U.S.S.G. Manual Appendix C, Amendment 358 (effective Nov. 1, 1990) (removing reference to relevant conduct from § 5K2.0); *United States v. Baird*, 109 F.3d 856, 864 (3d Cir. 1997) (collecting cases). This does not, however, mean that a court may base an upward departure on conduct that is completely unrelated to the offense of conviction. As every court of appeals to address the issue has concluded, "with respect to acts of misconduct not resulting in conviction, the [Sentencing] Commission intended to preclude departures for acts bearing no relationship to the offense of conviction, but to permit departures for acts that relate in some way to the offense of conviction, even though not technically covered by the definition of relevant conduct." *Id.* (quoting *Kim*, 896 F.2d at 684). *Accord United States v. Tropiano*, 50 F.3d 157, 164 (2d Cir.1995); *United States v. Haggerty*, 4 F.3d 901, 904 n. 2 (10th Cir. 1993); *United States v. Dawson*, 1 F.3d 457, 465 (7th Cir.1993); *United States v. Ledesma*, 979 F.2d 816, 822 (11th Cir.1992); *United States v. Roberson*, 872 F.2d 597, 603 (5th Cir.), *cert. denied*, 493 U.S. 861, 110 S.Ct. 175, 107 L.Ed.2d 131 (1989). *See also* William W. Wilkins, Jr. & John R. Steer, *Relevant Conduct: The Cornerstone of the Federal Sentencing Guidelines*, 41 S.C.L. REV. 495, 504 n. 55 (1990) ("[S]ection 1B1.3 potentially makes relevant a greater range of conduct than the specific offense guideline in Chapter Two, or subsequent adjustments in guideline application, may take into account. The balance of that 'uncounted'[ ] conduct or information, *along with other relevant, reliable information outside the bounds of section 1B1.3,* may be considered in determining the appropriate sentence within a guideline range or may warrant departure under the standards of 18 U.S.C. § 3553(b) (1988).") (emphasis added).

The Sentencing Commission has carefully considered what degree of logical and temporal nexus between the offense of conviction and other misconduct merits including that conduct in the calculation of the convict's sentence, and has codified its conclusion in the Guidelines provisions for determining relevant conduct and criminal history levels. Section 1B1.3's detailed definition of "relevant conduct" demonstrates that the Commission has considered and rejected the notion that conduct completely unrelated to the offense of conviction should factor into the calculation of the Guideline range;[5] to allow departures based on such conduct would be contrary to the statutory command that only factors " 'not adequately taken into consideration by the sentencing Commission' " can justify a departure. *See* U.S.S.G. § 5K2.0 (policy statement) (quoting 18 U.S.C. § 3553(b)). Although the Commission has left open the possibility that some conduct that does not fall within the technical definition of "relevant conduct" (because it relates to the offense of conviction in an unusual way that the Commission did not foresee) may nonetheless be related to the offense of conviction and may therefore be used in departing from the guidelines, there is nothing in the record before us to suggest that this is such an unusual case. We therefore vacate Cross's four-level upward departure and remand to the district court for further factual

---

5. We note, too, that, in general, the specific grounds for departure that the Commission listed in Chapter 5 of the Guidelines Manual themselves require a nexus between the offense of conviction and the conduct that forms the basis for the departure. *See* U.S.S.G. §§ 5K2.1–17. *Cf. id.* § 1B1.1 commentary, applic. note 1(*l*) (" 'Offense' means the offense of conviction and all relevant conduct … unless a different meaning is specified or is otherwise clear from the context."). The existence of these individual relevancy requirements is at least part of the reason that the technical definition of "relevant conduct" in § 1B1.3 does not apply to departures. *See id.* § 1B1.3 commentary, background ("Subsection (a) establishes a rule of construction by specifying, in the absence of more explicit instructions in the context of a specific guideline, the range of conduct that is relevant to determining the applicable offense level…. No such rule of construction is necessary with respect to Chapters Four and Five because the guidelines in those Chapters are explicit as to the specific factors to be considered."). The Sentencing "Commission[ ] expect[ed] that departures based on grounds not mentioned in the Guidelines will be 'highly infrequent.' " *Koon v. United States*, —— U.S. ——, ——, 116 S.Ct. 2035, 2045, 135 L.Ed.2d 392 (1996) (quoting U.S.S.G. ch. 1 pt. A(b)). Because all of the grounds that are mentioned require a nexus between the conduct and the offense of conviction, departures based on conduct that lacks this nexus should be equally infrequent.

findings concerning this issue and resentencing.

## 3. Whether the Sentencing Court may Depart Upwards Based on Conduct that was Part of a Count Dismissed Pursuant to a Plea Agreement

■ Cross's final argument also relates to the district court's decision to depart upward by four levels based on Cross's participation in torturing Lovelace. Cross contends that conduct that formed part of a count dismissed pursuant to a plea agreement cannot be considered as a basis for an upward departure under the Guidelines, and therefore that the district court erred in making a departure based on his participation in the torture, which was a part of the conspiracy count that the government dismissed pursuant to Cross's plea agreement. *See* J.A. at 18 (Indictment). If his position were correct, the district court would be absolutely prohibited from departing based on Cross's participation in the torture and there would be no need for the district court to address on remand whether, as a factual matter, a sufficient nexus exists between the torture and Cross's offense of conviction to support the departure, as discussed above in Part II.B.2. We therefore reach the issue and hold that, although there may be valid reasons to support Cross's position in some cases, the Guidelines mandate a contrary conclusion here.

U.S.S.G. § 1B1.4 states that "[i]n determining the sentence to impose within the guideline range, *or whether a departure from the guidelines is warranted,* the court may consider, *without limitation, any information concerning the background, character and conduct of the defendant,* unless otherwise prohibited by law." (emphasis added). *See* 18 U.S.C. § 3661; *United States v. Watts,* —— U.S. ——, ——, 117 S.Ct. 633, 635, 136 L.Ed.2d 554 (1997) (per curiam). If we had any doubt that this provision allowed the district court to base an upward departure on conduct covered by dismissed counts, the commentary to this section would dispel it: "[I]f the defendant committed two robberies, but as part of a plea negotiation entered a guilty plea to only one, the robbery that

was not taken into account by the guidelines would provide a reason for sentencing at the top of the guideline range. In addition, information that does not enter into the determination of the applicable guideline sentencing range may be considered in determining whether and to what extent to depart from the guidelines." U.S.S.G. § 1B1.4 commentary, background. This commentary is authoritative as to the meaning of § 1B1.4. *Stinson v. United States,* 508 U.S. 36, 38, 113 S.Ct. 1913, 1915, 123 L.Ed.2d 598 (1993) ("[C]ommentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline."). U.S.S.G. § 1B1.4, then, permits the court to consider conduct which is the basis of a dismissed count in deciding whether, and to what extent, to depart from the guideline range.

This is, however, not the end of our analysis of this question. In *United States v. Castro–Cervantes,* 927 F.2d 1079, 1080, 1082 (9th Cir.1990), the district court had departed upward in a bank robbery case based on the sheer number of heists (nine), even though the charges for five of the robberies had been dismissed by plea agreement. The Ninth Circuit reversed on the grounds that, although § 1B1.4 seems to allow a district court to take such conduct into account for the purposes of departing upward, § 6B1.2(a) requires that a district court may accept a plea agreement only if "the remaining charges adequately reflect the seriousness of the actual offense behavior." U.S.S.G. § 6B1.2(a) (policy statement). If the district court had found it necessary to depart upwards based on the dismissed counts, then the remaining charges ipso facto did not adequately reflect the seriousness of the conduct, and it was error for the court to accept the plea in the first place. 927 F.2d at 1082. The court's remedy was to vacate the sentence and remand for resentencing. *Id.*

We note first that *Castro–Cervantes* differs from the case at bar in one important respect. The upward departure in that case was based purely on the commission of the charged, but later dismissed, robberies, and

not for any unusual conduct that occurred during those robberies. If that court believed that the sentence should reflect the simple fact that the defendant had committed nine robberies, it should have rejected the plea agreement, which dismissed five of those counts, as too lenient and forced Castro–Cervantes either to plead guilty to more counts or to stand trial. *See* U.S.S.G. § 6B1.2(a); FED. R.CRIM. P. 11(e); S. REP. No. 98–225, at 167 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3350 (noting that Rule 11(e) is drafted so that "sentencing judges review charge-reduction plea agreements to ensure that such agreements do not result in undue leniency or unwarranted sentencing disparities."). Each robbery (and the loot therefrom) would then have gone into the offense level calculations, and there would have been no need for any departure. *See Castro–Cervantes*, 927 F.2d at 1081. *Cf. United States v. McDowell*, 902 F.2d 451, 453 (6th Cir.1990) (district court erred when it "considered [a factor] as a justification for an upward departure when it should have considered this conduct in calculating the defendant's base offense level."). In the matter at hand, however, Cross was never charged with torturing Lovelace; he was charged in a broad conspiracy to possess and distribute cocaine, of which the torture was but one small, albeit ugly, part. *See* J.A. at 17–18. If he had pleaded guilty to all the charges against him, the court would still have had to depart upwards to account for the torture; that is exactly what it did in his cohorts' cases. The dismissed conspiracy charge no more reflected Cross's culpability for torture than did the distribution charge to which he pleaded guilty, and the district court's acceptance of the plea agreement could not have been erroneous under U.S.S.G. § 6B1.2(a). *Castro–Cervantes* is therefore inapposite.[6]

We believe, too, that *Castro–Cervantes*'s reasoning is somewhat circular. If the district court has the authority to depart upwards on the basis of dismissed counts, then the remaining charges may be made to reflect the seriousness of the defendant's behavior, so long as the statutory maximum sentence is itself adequate. *See United States v. Baird*, 109 F.3d 856, 868 (3d Cir. 1997) (*Castro–Cervantes* "begs the ultimate question."); *United States v. Ashburn*, 38 F.3d 803, 808 (5th Cir.1994) (en banc), *cert. denied*, —— U.S. ——, 115 S.Ct. 1969, 131 L.Ed.2d 858 (1995) (adequacy of remaining charges determined by statutory maximum sentences). This same flaw adheres to the court's claim that it is unfair for a court to "let the defendant plead to certain charges and then be penalized on charges that have, by agreement, been dismissed." *Castro–Cervantes*, 927 F.2d at 1082. This would be unfair only if the defendant did not know when he entered the plea that the court could penalize him on the basis of the dismissed counts. Finally, it is unclear why, if the district court's error was in accepting too lenient a plea in the first place, the proper remedy is to require that the court impose too small a sentence, rather than to allow the defendant to withdraw the plea and replead or go to trial.[7] *Cf. United States v. Kemper*, 908 F.2d 33, 37 (6th Cir.1990) ("[T]he appropriate cure for a properly rejected plea

---

6. This also distinguishes this case from *United States v. Plaza–Garcia*, 914 F.2d 345, 346–48 (1st Cir.1990), in which then-Chief-Judge Breyer suggested that the district court had erred in departing upwards to bring a defendant's sentence to the same level it would have been had no charges been dismissed per the plea agreement. *See id.* at 348 ("The court seems to have departed from the guidelines so that defendant's sentence would reflect the *conduct charged* in the [dismissed counts].... But if the court believed that defendant's punishment should reflect that conduct, why did it accept the plea bargain in the first place? We are not suggesting that a district court cannot depart on the basis of related conduct that was the subject of dropped charges.") (citation omitted) (emphasis added).

7. It is unclear, too, why the *Castro–Cervantes* court believed that a general policy statement in § 6B1.2(a) should, in effect, trump the extremely specific example in the commentary to § 1B1.4. *See* 2A NORMAN J. SINGER, SUTHERLAND STATUTES AND STATUTORY CONSTR. § 46.05 (5th ed. 1992) ("Where there is inescapable conflict between general and specific terms or provisions of a statute, the specific will prevail."). The answer may be that, at the time, the Ninth Circuit gave too little weight to the Guidelines commentary. *See United States v. Anderson*, 942 F.2d 606, 608 (9th Cir.1991) (en banc) (holding that commentary is binding and overturning earlier holding in same case, 895 F.2d 641 (9th Cir.1990), which had held that the commentary "is to be treated like legislative history.").

agreement is not specific performance of the plea agreement, as defendant alleges, but opportunity to withdraw the plea pursuant to Guideline § 6B1.3."). Ultimately, the Ninth Circuit's reasoning is unpersuasive, and to the extent that *Castro–Cervantes* is relevant to this case we decline to follow it.

■ The Eighth Circuit has taken a different route to arrive at the same conclusion as the Ninth Circuit's. In *United States v. Harris*, 70 F.3d 1001, 1003 (8th Cir.1995), the court expressed concern that allowing a district court to accept a plea bargain but then depart upwards on the basis of conduct covered in the dismissed counts would "eviscerate the plea bargaining process that is vital to the courts' administration" by denying the defendant the benefit of his plea. *Harris,* like *Castro–Cervantes,* is unlike the case before us: the departure was based on the simple fact that Harris had committed the crime in the dismissed count, and even the government agreed that Harris's plea agreement was intended to preclude the use of the dismissed charges in calculating his sentence. *Id.* at 1002–03. There is, in contrast, nothing to suggest here that the government's agreement with Cross was intended to preclude the court from considering the torture. *See* J.A. at 101 (Plea Agreement) ("Mr. Cross further acknowledges that he understands that the Court will determine the appropriate sentence under the Sentencing Guidelines and that this determination will be based upon the entire scope of his criminal conduct, his criminal history, and pursuant to other factors and guidelines as set forth in the Sentencing Guidelines."). Furthermore, while we share the *Harris* court's concern that such departures could potentially introduce excessive uncertainty into the plea bargaining process,[8] we cannot agree with its solution. The Supreme Court has made it

quite clear that the Sentencing Commission, not the judiciary, has the duty and authority to make this kind of broad policy decision.[9] *Koon v. United States,* —— U.S. ——, ——, 116 S.Ct. 2035, 2050, 135 L.Ed.2d 392 (1996). As noted above, § 1B1.4 and its commentary (which the *Harris* court never mentions) make it equally clear that the Commission intends that departures be allowed based on conduct which was the subject of dismissed counts. Unless the Commission changes its mind (and amends the guidelines), we cannot impose a different rule.

In short, we hold that under § 1B1.4 and its commentary, a district court may depart upwards based on conduct that is covered by a dismissed count. *Accord Baird,* 109 F.3d. at 870; *United States v. Zamarripa,* 905 F.2d 337, 341 (10th Cir.1990); *United States v. Kim,* 896 F.2d 678, 685 (2d Cir.1990) (allowing upward departure for misconduct involved in three dismissed counts, *see id.* at 680). *See also United States v. Barber,* 119 F.3d 276, 284 (4th Cir.1997) (en banc) (same); *United States v. Roberson,* 872 F.2d 597, 605 n. 6 (5th Cir.1989) (same, in dicta). *Cf. Ashburn,* 38 F.3d at 808 (allowing use of dismissed counts in departing from criminal history calculation); WAYNE R. LaFAVE & JEROLD H. ISRAEL, 2 CRIMINAL PROCEDURE § 20.2 p. 592 (1984) (noting with apparent approval that under the pre-Guideline system appellate courts consistently upheld "tak[ing] into account an aspect of defendant's conduct encompassed within a charge dropped pursuant to a plea bargain."). The Guidelines allow and in many cases require the sentencing court to take into account a broad array of information. *See, e.g.,* 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court ...

---

8. We note, however, that FED. R.CRIM P. 11(e)(1)(C) allows the parties to avoid any uncertainty by agreeing to a specific sentence or sentencing range. If the court accepts such an agreement, it cannot impose a sentence beyond this range. *See Kemper,* 908 F.2d at 35–36.

9. As the *Harris* court concedes, any judicial attempt to safeguard defendants' side of plea agreements must in any case be incomplete, because it is well settled that conduct in dismissed

counts can be used in calculating the base offense level and adjustments. 70 F.3d at 1003. *See* U.S.S.G. § 6B1.2(a) (policy statement) ("[A] plea agreement that includes the dismissal of a charge ... shall not preclude the conduct underlying such charge from being considered under the provisions of § 1B1.3 (Relevant Conduct)...."); *United States v. Hill,* 79 F.3d 1477, 1481 (6th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 158, 136 L.Ed.2d 102 (1996).

may receive and consider for the purpose of imposing an appropriate sentence."); *United States v. Watts,* —— U.S. ——, ——, 117 S.Ct. 633, 635, 136 L.Ed.2d 554 (1997) (per curiam) (conduct underlying charges which resulted in acquittal); *United States v. Hill,* 79 F.3d 1477, 1481 (6th Cir.1996) (conduct underlying dismissed counts in calculating base offense level); *United States v. Jenkins,* 4 F.3d 1338, 1344–45 (6th Cir.1993) (suppressed evidence), *cert. denied,* 511 U.S. 1034, 114 S.Ct. 1547, 128 L.Ed.2d 197 (1994). We once again caution defense attorneys to counsel their clients accordingly. *See Hill,* 79 F.3d at 1481; *United States v. Ykema,* 887 F.2d 697, 699–700 (6th Cir.1989), *cert. denied,* 493 U.S. 1062, 110 S.Ct. 878, 107 L.Ed.2d 961 (1990). *Cf.* note 8, *supra.* As discussed in Part II.B.2, *supra,* however, we vacate Cross's four-level upward departure and remand to the district court for factual findings regarding whether the torture was related to Cross's offense of conviction.

### III. CONCLUSION

For the reasons discussed above we **AFFIRM** Thomas's sentence in full but **VACATE** the sentence imposed on Cross and remand his case to the district court for further factual findings and resentencing in accordance with this decision.[10]

---

10. We find no merit to Cross's claim that *United States v. Roberson,* 872 F.2d 597, 603 (5th Cir.), *cert. denied,* 493 U.S. 861, 110 S.Ct. 175, 107 L.Ed.2d 131 (1989), prohibits the district court from departing upward unless *the* victim of the offense of conviction suffered harm. *Roberson* stands only for the proposition for which we cite it in Part II.B.2, that there must be a nexus between the offense of conviction and conduct used as a basis for an upward departure. *See id.* We address—and reject—Cross's related argument that U.S.S.G. § 3A1.3 can apply only to cases in which the restraint involves the victim of the offense of conviction in our disposition of his co-defendant Wright's appeal. *See United States v. Wright,* 119 F.3d 390 (6th Cir.1997).