*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0271P (6th Cir.)
File Name: 03a0271p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

VICTOR SHUNTA BAKER
(01-6260); HENRY LEE TATE,
JR. (01-6313); and JASON
BRIAN PATTERSON (01-6314),
*Defendants-Appellants.*

Nos. 01-6260/
6313/6314

Appeal from the United States District Court
for the Western District of Tennessee at Jackson.
No. 01-10006—James D. Todd, Chief District Judge.

Argued: March 25, 2003

Decided and Filed: August 5, 2003

Before: BOGGS and SILER, Circuit Judges; and STEEH,
District Judge.[*]

---

[*] The Honorable George C. Steeh, United States District Judge for the Eastern District of Michigan, sitting by designation.

---

### COUNSEL

**ARGUED:** Jeff Mueller, LAW OFFICE OF JEFF MUELLER, Jackson, Tennessee, M. Dianne Smothers, OFFICE OF THE FEDERAL PUBLIC DEFENDER FOR THE WESTERN DISTRICT OF TENNESSEE, Memphis, Tennessee, Matthew M. Maddox, MADDOX, MADDOX & MADDOX, Huntingdon, Tennessee, for Appellants. R. Leigh Grinalds, ASSISTANT UNITED STATES ATTORNEY, Jackson, Tennessee, for Appellee. **ON BRIEF:** Jeff Mueller, LAW OFFICE OF JEFF MUELLER, Jackson, Tennessee, M. Dianne Smothers, OFFICE OF THE FEDERAL PUBLIC DEFENDER FOR THE WESTERN DISTRICT OF TENNESSEE, Memphis, Tennessee, Matthew M. Maddox, MADDOX, MADDOX & MADDOX, Huntingdon, Tennessee, for Appellants. R. Leigh Grinalds, ASSISTANT UNITED STATES ATTORNEY, Jackson, Tennessee, for Appellee.

---

### OPINION

---

BOGGS, Circuit Judge. Victor Shunta Baker, Henry Lee Tate, Jr., and Jason Brian Patterson appeal their sentences of over twenty years of imprisonment for interstate robbery and attendant firearms offenses. The district court enhanced their sentences under the guidelines for infliction of significant injury on a security guard that they shot. In addition, the district court departed upward from the guidelines because the guard's arm had to be amputated as a result of the injuries they inflicted and because of the particularly heinous and cruel nature of their conduct. Appellants contend that this upward departure impermissibly double-counts the injuries that they inflicted on the guard. Baker also argues that his

lesser participation in the offense was not sufficiently reflected in his sentence. We affirm.

## I

On December 14, 2000, Patterson, Tate, Baker, and a fourth person, Vystoskia Tonve Pirtle, decided to commit an armed robbery. In preparation, they stole a truck and Baker retrieved a 12-gauge short-barreled shotgun to be used in the robbery. After looking in vain for the originally intended victim, they decided rob Brooksie's Barn restaurant in Jackson, Tennessee, instead. The gang had inside information on Brooksie's because Baker had worked at the establishment previously and Baker's mother had been a cook there for seventeen years. As Baker waited in the truck, the other members donned ski masks and broke into the restaurant. Inside, they encountered Arthur Dale Parker, a 65-year-old, uniformed, private security guard, who immediately raised his arms. Nevertheless, Parker was shot with the shotgun and kicked in the side and teeth.[1] As he lost consciousness, Parker heard an order to shoot him should he move. When he stirred, he was shot at again, this time with his own .22-caliber long-rifle revolver, but was not hit. The resulting injuries were severe enough to threaten his life and to necessitate the amputation of his dominant, right arm. The gang members escaped with $5,803.72 in Brooksie's cash, checks, and credit card receipts, and Parker's gun. Within days the police tracked down, arrested, and obtained confessions from each of the perpetrators.

On February 26, 2001, a five-count indictment was filed in the district court. Each member of the gang was charged with

---

[1] While his accomplices testified that they either saw Patterson fire the shots or heard him confess to firing the shots, Patterson denied this. The trial court made no findings of fact on this issue and needed to make none.

(I) conspiracy to interfere with interstate commerce by robbery, in violation of 18 U.S.C. § 1951,[2] (II) the completed interference, also in violation of 18 U.S.C. § 1951, (III) brandishing and discharge of the shotgun in the commission of the robbery, in violation of 18 U.S.C. § 924(c)(1)(A)(iii)[3] and (B)(i)[4], or aiding and abetting the same, in violation of 18 U.S.C. § 2,[5] (IV) discharge of the revolver, in violation of 18 U.S.C. § 924(c)(1)(A)(iii), or aiding and abetting the same, in violation of 18 U.S.C. § 2, and (V) possession of the revolver stolen from Parker, in violation of 18 U.S.C. § 922(j),[6] or aiding and abetting the

---

[2] "Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both." 18 U.S.C. § 1951(a).

[3] "[A]ny person who, during and in relation to any crime of violence . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime . . . if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years." 18 U.S.C. § 924(c)(1)(A)(iii).

[4] "If the firearm possessed by a person convicted of a violation of this subsection . . . is a short-barreled rifle, short-barreled shotgun, or semiautomatic assault weapon, the person shall be sentenced to a term of imprisonment of not less than 10 years." 18 U.S.C. § 924(c)(1)(B)(i).

[5] "Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal." 18 U.S.C. § 2.

[6] "It shall be unlawful for any person to receive, possess, conceal, store, barter, sell, or dispose of any stolen firearm or stolen ammunition, or pledge or accept as security for a loan any stolen firearm or stolen

same, in violation of 18 U.S.C. § 2. Over the following months, plea negotiations resulted in guilty pleas to counts II and III by Patterson and Baker and counts II and IV by Tate in return for the dismissal of the other charges against them. The charges against Pirtle were otherwise disposed of and are not part of this appeal.

The pre-sentencing report contained the same calculation for each remaining defendant: The base offense level of count II, robbery, was twenty. U.S.S.G. § 2B3.1(a). This base level was enhanced by six for permanent or life-threatening bodily injury, U.S.S.G. § 2B3.1(b)(3)(C), by one for taking of a firearm, U.S.S.G. § 2B3.1(b)(6), and by three for assault on a law enforcement officer, U.S.S.G. § 3A1.2(b). This offense level was decreased by three for acceptance of responsibility, U.S.S.G. § 3E1.1, resulting in a total adjusted offense level of twenty-seven. The pre-sentence report also contemplated, but left to the discretion of the court, upward departures for intentional infliction of permanent or life-threatening injury, U.S.S.G. § 5K2.2, and unusually heinous, cruel, or brutal conduct, U.S.S.G. § 5K2.8. Each of the remaining defendants had a criminal history category of IV. This resulted in a guideline range of 100 to 125 months imprisonment. Counts III and IV, the firearms offenses, added consecutive 120-month sentences for each remaining defendant. U.S.S.G. § 5G1.1(a).

At the September 28 sentencing hearing, the district court disallowed the three-level enhancement under U.S.S.G. § 3A1.2(b), because Parker was not a law enforcement officer. However, the court also ordered a five-level upward departure to account for both the gravity of the injury inflicted

---

ammunition, which is moving as, which is a part of, which constitutes, or which has been shipped or transported in, interstate or foreign commerce, either before or after it was stolen, knowing or having reasonable cause to believe that the firearm or ammunition was stolen." 18 U.S.C. § 922(j).

upon Parker, under U.S.S.G. § 5K2.2, and the heinous nature of the defendants' conduct, under U.S.S.G. § 5K2.8. This resulted in a total offense level of twenty-nine and a guideline range of 121 to 151 months. On October 3, Patterson and Tate were sentenced to 135 months and Baker to 121 months on count II and each to an additional 120 months on counts III or IV. Before this court now are the timely appeals of these sentences.

## II

We review the district court's sentencing decisions under a deferential standard. "A defendant may file a notice of appeal in the district court for review of an otherwise final sentence if the sentence . . . was imposed as a result of an incorrect application of the sentencing guidelines." 18 U.S.C. § 3742(a)(2). "Upon review of the record, the court of appeals shall determine whether the sentence . . . was imposed as a result of an incorrect application of the sentencing guidelines." 18 U.S.C. § 3742(e)(2). "The court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous and . . . shall give due deference to the district court's application of the guidelines to the facts." 18 U.S.C. § 3742(e). "[T]he sentencing court may impose a sentence outside the range established by the applicable guidelines, if the court finds 'that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.'" U.S.S.G. § 5K2.0; *see also Koon v. United States*, 518 U.S. 81, 95 (1996). "We review decisions to depart from the sentencing guidelines for abuse of discretion." *United States v. Valentine*, 100 F.3d 1209, 1210 (6th Cir. 1996) (citing *Koon*, 518 U.S. at 98).

All appellants contend that the five-level upward departure under § 5K2.2 double-counts conduct already accounted for by the six-level enhancement under § 2B3.1(b)(3)(C). Section 2B3.1(b)(3) provides for an enhancement to a robbery sentence when the victim suffers physical injury.

> If any victim sustained bodily injury, increase the offense level according to the seriousness of the injury[:] (A) Bodily Injury [,] add 2 [;] (B) Serious Bodily Injury [,] add 4 [;] (C) Permanent or Life-Threatening Bodily Injury [,] add 6 [;] (D) If the degree of injury is between that specified in subdivisions (A) and (B), add 3 levels; or (E) If the degree of injury is between that specified in subdivisions (B) and (C), add 5 levels.

U.S.S.G. § 2B3.1(b)(3). Section 5K2.2 permits upward departure to sentences in general, based on a similar factual predicate:

> If significant physical injury resulted, the court may increase the sentence above the authorized guideline range. The extent of the increase ordinarily should depend on the extent of the injury, the degree to which it may prove permanent, and the extent to which the injury was intended or knowingly risked. When the victim suffers a major, permanent disability and when such injury was intentionally inflicted, a substantial departure may be appropriate.

U.S.S.G. § 5K2.2.

The appellants' argument is bolstered by the language of § 5K2.0. "[P]hysical injury would not warrant departure from the guidelines when the robbery offense guideline is applicable because the robbery guideline includes a specific adjustment based on the extent of any injury." U.S.S.G. § 5K2.0. Rather, upward departures under § 5K2.0 should be confined to circumstances not already explicitly accounted for

by the guidelines. For example, "because the robbery guideline does not deal with injury to more than one victim, departure would be warranted if several persons were injured." U.S.S.G. §5K2.0. However, § 5K2.0 does not entirely close the door to additional consideration of circumstances already explicitly accounted for in the guidelines:

> [T]he court may depart from the guidelines, even though the reason for departure is taken into consideration in determining the guideline range (e.g., as a specific offense characteristic or other adjustment), if the court determines that, in light of unusual circumstances, the weight attached to that factor under the guidelines is inadequate or excessive.

U.S.S.G. § 5K2.0.

Contrary to the government's contention, such extreme or unusual circumstances do not exist here. *See, e.g., United States v. Myers*, 66 F.3d 1364, 1373-75 (4th Cir. 1995) (reversing enhancement under § 5K2.2 for physical injury where physical injury was already accounted for by § 2B3.1(b)(3)(C) and district court made no finding that the guideline enhancement was inadequate). Appalling as the defendants' conduct and its consequences were by the standards of any civilized person, it is no extreme outlier within the universe of robberies resulting in permanent or life-threatening injuries, for surely every such robbery is appalling. It was this universe of cases that the sentencing commission contemplated and determined to merit a six-level enhancement, not an eleven-level enhancement. If physical injury no worse than Parker's justified upward departure, it would be justified not merely in the unusual, but in many or even most robberies inflicting life-threatening or permanent injury. We therefore conclude that the five-level upward departure cannot be sustained under § 5K2.2.

The district court alternatively supported the same five-level upward departure under § 5K2.8:

> If the defendant's conduct was unusually heinous, cruel, brutal, or degrading to the victim, the court may increase the sentence above the guideline range to reflect the nature of the conduct. Examples of extreme conduct include torture of a victim, gratuitous infliction of injury, or prolonging of pain or humiliation.

U.S.S.G. § 5K2.8.

The exact contours of conduct that is "unusually heinous, cruel, brutal, or degrading" must be defined by the case law. This court has upheld such upward departures on this basis in almost every case where the district court gave a specific justification. *Compare United States v. Beal*, 2003 WL 264733, at *1 (6th Cir. 2003) (table) (upholding one-level upward departure under § 5K2.8 where assailant of federal employees threw feces at victims), *United States v. Sizemore*, 238 F.3d 425, 2000 WL 1871723, at *1 (6th Cir. 2000) (table) (upholding four-level upward departure under § 5K2.8 where drug conspirators had tortured co-conspirator)*, United States v. Davis*, 170 F.3d 617, 624 (6th Cir. 1999) (upholding eight-level upward departure under § 5K2.8 where wire-fraud defendant intentionally inflicted psychic harm on elderly, sick telemarketing victims by being "loud, rude, obnoxious, [and] controlling"); *United States v. Cross*, 121 F.3d 234, 238 (6th Cir. 1997) (upholding four-level upward departure under § 5K2.8 where drug conspirator "burn[ed] [victim] with . . . hot scissors, pour[ed] rubbing alcohol on his wounds and mouth, and forc[ed] him to eat dog feces.")*, United States v. Wright*, 119 F.3d 390, 393 (6th Cir. 1997) (upholding four-level upward departure under § 5K2.8 where drug conspirator forced torture victim to ingest rubbing alcohol and dog feces), *United States v. Phillip*, 948 F.2d 241, 252-54 (6th Cir. 1991) (upholding three-level upward departure under § 5K2.8 where defendant murdered his four-year old son by beating and

burning him to death over a period of weeks), *United States v. Harris*, 943 F.2d 53, 1990 WL 159149, at *3 (6th Cir. 1991) (table) (upholding ten- and twelve-level departures under § 5K2.8 where witness-tamperers had abducted witness and raped witness's wife), *United States v. Patrick*, 935 F.2d 758, 761 (6th Cir. 1991) (upholding six-level upward departure under § 5K2.0 where kidnapper had attempted to "possess" three-year old victim indefinitely, citing § 5K2.8)*, and United States v. Cofer*, 916 F.2d 713, 1990 WL 159149, at *5 (6th Cir. 1990) (table) (upholding two-level upward departure under § 5K2.8 where defendant sexually abused children not only by taking sexually explicit photographs of them but also otherwise during the production of the photographs), *with Davis*, 170 F.3d at 630 (reversing upward departure under § 5K2.8 where wire-fraud co-defendant was "nice" to telemarketing victims); *United States v. Surratt*, 87 F.3d 814, 820 (6th Cir. 1996) (upholding denial of upward departure under § 5K2.8 where government offered no evidence that child pornography recipient had harmed depicted children), *United States v. Cook*, 36 F.3d 1098, 1994 WL 514528, at *6 (6th Cir. 1994) (table) (reversing upward departure under § 5K2.8 where wire fraud defendant inflicted no physical injury)*, United States v. Pelfrey*, 996 F.2d 1218, 1993 WL 210716, at *2 (6th Cir. 1993) (table) (holding excessive the equivalent of a thirteen-level upward departure under § 5K2.8 where stalker of a celebrity had "relentlessly" pursued victim), *and United States v. Wilson*, 958 F.2d 372, 1992 WL 39132 (6th Cir. 1992) (table) (reversing upward departure under § 5K2.8 based only on the district court's unsupported statement that defendant's conduct was "extreme").

Under these precedents, the district court did not abuse its discretion in finding the defendants' conduct to be sufficiently heinous to depart upward. The defendants in the course of their robbery did not merely shoot Parker after he had raised his hands in surrender, inflicting permanent and life-threatening injuries on him. After they had shot and disarmed

him, when all reasonable possibility of resistance on Parker's part had vanished, they continued to brutalize him. They kicked his wounded body until he passed out, in the process moving his body a distance of about twenty to twenty-five feet across the kitchen floor. When he came to, his stirring was sufficient for the defendants to shoot at him again with his own gun, apparently following up on their threat to kill him if he moved. If the shooter's aim had been better, this could very easily have been a murder case. These subsequent, gratuitous actions by the defendants were not accounted for in the offense level calculations and are sufficiently heinous to justify an upward departure. As to the degree of upward departure, we have upheld a broad spectrum of enhancements for an even more varied set of heinous conduct. The five levels granted by the district court here are not outside of this broad spectrum.[7]

A sentencing court's upward departure based on both applicable factors and factors incorrectly applied can be upheld if the departure was reasonable for the applicable factors alone.

If the party defending the sentence persuades the court of appeals that the district court would have imposed the same sentence absent the erroneous factor, then a remand is not required under § 3742(f)(1), and the court of appeals may affirm the sentence as long as it is also satisfied that the departure is reasonable under § 3742(f)(2). The reasonableness determination looks to the amount and extent of the departure in light of the grounds for departing. In assessing reasonableness under

---

[7]We also note that Patterson's and Tate's sentences would still have been within the guideline range under a four-level upward departure and Baker's even under a three-level upward departure. So even a one- or two-level reduction from the five-level upward departure actually imposed would not necessarily have resulted in a different sentence.

§ 3742(f)(2), the Act directs a court of appeals to examine the factors to be considered in imposing a sentence under the Guidelines, as well as the district court's stated reasons for the imposition of the particular sentence. § 3742(e). A sentence thus can be 'reasonable' even if some of the reasons given by the district court to justify the departure from the presumptive guideline range are invalid, provided that the remaining reasons are sufficient to justify the magnitude of the departure.

*Williams v. United States*, 503 U.S. 193, 203-04 (1992). *See also, e.g.*, *United States v. Chance*, 306 F.3d 356, 396-97 (6th Cir. 2002); *United States v. Hart*, 70 F.3d 854, 862 (6th Cir. 1995); *United States v. Lowenstein*, 1 F.3d 452, 454 (6th Cir. 1993). In this case, we conclude that the sentence can be upheld on this basis, even if the district court did incorrectly consider the physical injury in departing. The departure would have been justified on the basis of § 5K2.8 alone. There is no indication in the record that the district court required both reasons to justify the total amount of the departure. Hence no remand is necessary.

### III

In addition to the § 5K2.2 and § 5K2.8 issues raised by all defendants, Baker also contends that his sentence must be overturned on grounds specific to him. He argues that his sentence was unjustified because his conduct was less culpable than that of his co-defendants in that he, as the driver, never entered Brooksie's and did not physically participate in the abuse of Parker. Therefore he should have received a less severe sentence. This argument fails for at least three reasons. Baker cites no binding precedent for reversal of an otherwise valid sentence on the basis that more culpable co-defendants were not punished more severely. Such precedent as he does cite points in the opposite direction. *United States v. Parker*, 912 F.2d 156, 158 (6th Cir. 1990) (reversing downward departure ordered by the trial

court on the basis that an equally culpable co-defendant had received a lower sentence); *United States v. Romano*, 970 F.2d 164, 167 (6th Cir. 1992) (finding "no merit in defendant's claim that his sentence is excessive when compared to the sentences received by his codefendants"); *see also Cross*, 121 F.3d at 238 (holding that the "guidelines do not require any distinction between principals and accomplices"). Second, while Baker was less culpable in some respects, in others, he was more so. It was Baker who retrieved the gun used to perpetrate the crime and provided what the gang expected would be the means of escape. It was Baker who, the court below found, selected Brooksie's as the site based on his familiarity with the establishment. And it was Baker whose conduct resulted in the crippling, not of a random stranger, but of a long-time co-worker of his own and his mother's, a man with whom he presumably had a pre-existing relationship. Finally, Baker, though sentenced within the same range as his co-defendants, did receive a sentence at the bottom of the range, rather than the middle as they did, resulting in a reduction of incarceration by more than a year and reflecting a slightly lower degree of culpability.

Baker also argues that his sentence should not have been enhanced for the abuse of Parker, as he could not have foreseen it. Baker bases his conclusion that he could not have foreseen the abuse on the following statement of the district court:

It was reasonably foreseeable that this victim would be shot. Now, it's *not as foreseeable* that he would be kicked. You didn't have any way of *knowing*, I suppose that they would kick him, but things like that happen, and when you are in a partnership with criminals, sometimes your partners do bad things and you end up getting punished for things that your cohorts did.

JA 274 (emphases added). To quote the court is to refute Baker's interpretation. The court merely stated that the

kicking was not *as foreseeable* as the shooting and that Baker did not *know* that it was going to occur. Nevertheless, the law does not require absolute foreknowledge and a lesser degree of foreseeability is still sufficient. The quote concludes with the finding that such a sufficient degree of foreseeability still existed.

## IV

For the foregoing reasons, we **AFFIRM** all sentences.